## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RYAN FRISKE, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | |
| v. | **Class Action** |
| | **Demand For Jury Trial** |
| BONNIER CORPORATION, a Delaware corporation, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

COMES NOW, Ryan Friske, ("Plaintiff") on behalf of himself and all others similarly situated and alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this action individually and on behalf of all others similarly situated against Bonnier Corporation ("Defendant"), alleging violations of Michigan's Video Rental Privacy Act, M.C.L. § 445.1711 ("VRPA"), in connection with Defendant's disclosure of the personal information of Plaintiff and the Class (defined below).

2.      Defendant sells magazine subscriptions to Michigan residents and persons nationwide.

3.     After consumers subscribe to Defendant's publications, Defendant violates their privacy by selling its customers' personal information, including, but not limited to, their name, address and subscription history, to anyone willing to buy that information.

4.     Defendant does not inform its customers that it will sell their information, and does not obtain their consent to sell their information.

5.     Defendant's data practices violate the VRPA, and also violate the privacy rights and expectations of Defendant's customers.

6.     As a result of Defendant's privacy violations, Plaintiff brings this action on his behalf and on behalf of the Class, to enjoin Defendant from its illegal practices and ensure recovery for himself and all persons similarly situated.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs.  At least one class member is a citizen of a state different than Defendant.

8.     Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

9.     Venue in this judicial district is proper under 28 U.S.C. § 1391 in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

10.     Plaintiff Ryan Friske is a resident and citizen of Howell, Michigan.

11.     Defendant Bonnier Corporation is a Delaware corporation with its principal place of business located in Winter Park, FL.  Defendant sells magazine subscriptions nationwide, including, but not limited to, subscriptions to Boating Magazine.

## FACTUAL ALLEGATIONS

### I.     The Right to Privacy And The VPRA

1.     "Privacy is not a conservative or liberal or moderate issue.  It is an issue that goes to the deepest yearnings of all Americans that we are free and we cherish our freedom…."  S. Rep. 100-599, at 6 (quoting 100 Cong., 1st Sess. 1374 (Sept. 28, 1987)).

2.     "The right to privacy…is a specific right, one which individuals should understand.  And it is the role of the legislature to define, expand, and give meaning to the concept of privacy."  *Id.* (quoting 134 Cong. Rec. S5400-01 (May 10, 1988).

3.     "In practical terms our right to privacy protects the choice of movies that we watch with our family…[a]nd it protects the selection of books that we

choose to read." 134 Cong. Rec. S5399 (May 10, 1988). "These activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id.*

4.    "There's a gut feeling that people ought to be able to read books and watch films without the whole world knowing. Books and films are the intellectual vitamins that fuel the growth of individual thought. The whole process of intellectual growth is one of privacy—of quiet, and reflection. This intimate process should be protected from the disruptive intrusion of a roving eye." S. Rep. 100-599, at 7.

5.    Numerous consumer research studies confirm that consumers are concerned about their privacy and overwhelmingly believe that businesses should not collect and share their personal information, and that these concerns and beliefs significantly factor into consumer purchasing decisions.

6.    For example, a 2005 national telephone survey conducted by the University of Pennsylvania found that 66% of consumer internet-users disagreed that "it's OK with me if the supermarket I shop at keeps detailed records of my buying behavior." *See* Joseph Turow, Lauren Feldman, and Kimberly Meltzer, *Open to Exploitation: American Shoppers Online and Offline*, UNIVERSITY OF

PENNSYLVANIA at 4 (2005), *available at*, http://repository.upenn.edu/cgi/viewcontent.cgi?article=1035&context=asc_papers.

7.     Ten years later, a Bain & Company survey found that 91% of respondents "do not want companies selling their data," that about 80% of respondents "are uncomfortable with how their data is used and shared," that 66% "feel that is should be illegal for companies to collect or use such data without getting prior consent," and that fewer than 20% of respondents "want their purchase behavior or demographic data shared without permission." *See How can companies acquire customer data while building customer loyalty at the same time? Ask permission.*, BAIN & COMPANY (May 11, 2015), *available at*, http://www.bain.com/about/press/press-releases/Digital-privacy-survey-2015-press-release.aspx.

8.     A 2015 national telephone survey done by the University of Pennsylvania found that 84% of consumers "want to have control over what marketers can learn about me online," and that "72% of americans reject the idea that 'what companies know about me from my behavior online cannot hurt me." *See* Joseph Turow, Michael Hennessy, and Nora Draper, *The Tradeoff Fallacy: How Marketers Are Misrepresenting American Consumers And Opening Them Up To Exploitation*, UNIVERSITY OF PENNSYLVANIA at 14 (2015), *available at*, https://www.asc.upenn.edu/sites/default/files/TradeoffFallacy_1.pdf.

9.     In a 2015 consumer index survey conducted by TRUSTe, Inc., the company found that 92% of United States based internet users worry about their online privacy and 91% of the same demographic say they avoid companies that do not protect their privacy.  *See 2015 TRUSTe US Consumer Confidence Index*, TRUSTE,         https://www.truste.com/resources/privacy-research/us-consumer-confidence-index-2015/ (last visited July 11, 2016).

10.     To ensure that the people of Michigan could retain their individuality of expression, decide what information about themselves to share with the world, and protect their right to privacy, the Michigan Legislature passed the VPRA in 1988.  H.B. No. 5331, 1988 Mich. Legis. Serv. 378.

11.     The VRPA recognizes that "one's choice in videos, records, and books is nobody's business but one's own," and that "a person's choice in reading, music, and video entertainment is a private matter, and not a fit subject for consideration by gossipy publications, employers, clubs, or anyone else, for that matter."  *Privacy: Sales, Rentals of Videos, etc.*, H.B. No. 5331 (Jan. 20, 1989).

12.     To this end, the VRPA forbids individuals "engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings" from "disclos[ing] to any person, other than the customer, a record or information concerning the purchase, lease, rental, or

borrowing of those materials by a customer that indicates the identity of the customer." M.C.L. § 445.1712.

13.   Any person who violates the VRPA is liable in a civil action for damages to the customer identified in a disclosure, and any customer identified by such a disclosure may recover actual damages, or $5,000, whichever is greater, and costs and reasonable attorney fees. M.C.L. § 445.1715.

**II.   Defendant's Data Practices**

14.   Magazine and newspaper publishers, like Defendant, commonly engage in what is known as the Big Data industry.

15.   This industry exists to collect and sell data on consumers, including their purchasing and demographic information. In fact, the personal data of consumers is the form of currency that supports the Big Data industry. As the FTC recognized, "The larger the data set, the greater potential for analysis—and profit. *See* Pamela Jones Harbour, *Remarks Before FTC Exploring Privacy Roundtable*, Federal Trade Commission, 2 (Dec. 7, 2009), *available at*, http://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf.

16.   In 2014, the International Data Corporation estimated that the Big Data industry would reach $125 billion worldwide in 2015. *See* Gill Press, *6 Predictions For The $125 Billion Big Data Analytics Market in 2015*, Forbes (Dec. 11, 2014),

*available at*, http://www.forbes.com/sites/gilpress/2014/12/11/6-predictions-for-the-125-billion-big-data-analytics-market-in-2015/#5238e1812b20.

17.   Defendant, in particular, maintains a consumer database on its customers.

18.   This database is comprised of, but not limited to, its customers' names, addresses, and subscriber histories.

19.   Defendant makes its subscriber database available to anyone who wishes to purchase information on its customers.  *See* Bonnier Corporation Enhanced Masterfile Mailing List, *available at*, https://lists.nextmark.com/market?page=order/online/datacard&id=163712 (last visited July 28, 2016); *see also* Bonnier Corporation Marine & Aviation Masterfile Mailing List, *available at*, https://lists.nextmark.com/market?page=order/online/datacard&id=313456 (last visited July 28, 2016).

20.   This allows anyone, for any purpose, to obtain the most personal information of Defendant's customers, and to identify Defendant's customers by the publications to which they subscribe.

21.   Defendant does not obtain consent from its consumers to sell or disclose their personal information, and does not provide adequate disclosures regarding the sale of customer data.

### III.   Plaintiff's Experience

22.   Plaintiff subscribes to Boating Magazine.

23.   Boating Magazine is owned, operated and/or controlled by Defendant.

24.   Plaintiff never consented to the disclosure or sale of his personal information, and did not receive adequate notice from Defendant regarding the disclosure or sale of his personal information.

25.   Nevertheless, Defendant has made, and continues to make, Plaintiff's personal information available to sale for anyone, for any purpose.

26.   Defendant has profited from its uninformed and unconsented disclosures and sales of Plaintiff's personal information.

27.   Defendant's disclosure and sale of Plaintiff's personal information has violated his privacy rights and his right to control the disclosure of his personal information, and also has denied him the full value of his magazine subscription.

## CLASS ALLEGATIONS

28.   Plaintiff brings this class action on behalf of himself and all others similarly situated pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

29.   Plaintiff seeks to certify the following class: All Michigan citizens who purchased subscriptions to Defendant's publications within the applicable statute of limitations.

30.     Excluded from the Class are Defendant and its officers, directors and employees, the Court, the Court's immediate family and all Court staff, and Plaintiff's attorneys and their immediate family members.

31.     <u>Numerosity:</u> The class described above is so numerous that joinder of all individual members in one action would be impracticable.  On information of belief, hundreds, if not thousands of Michigan citizens have subscribed to Defendant's publications within the applicable statute of limitations.   The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

32.     <u>Ascertainability:</u> The class is ascertainable because Defendant keeps and collects the information of each class member in a detailed electronic database, and records when class members subscribe to its publications.

33.     <u>Typicality:</u>  Plaintiff's claims are typical of the claims of the members of the class.  The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.  The claims of Plaintiff and the Class arise from the same data practices, which have led to the unlawful disclosure of their personal information.  As such, the claims of Plaintiff and the Class rise and fall together and are typical of one another.

34.    <u>Common Questions of Fact and Law Predominate:</u>  There are numerous question of law or fact common to all class members.  For example, whether Defendant's practice of disclosing its customers' personal information without their consent to third-parties so those third-parties can use that information for any purpose violates the VRPA is a common question to all class members, and this question is susceptible to a common answer.  Whether Defendant is engaged in the business of selling at retail books or other written materials is another question that is common to the class.  These questions and others like them predominate over individual issues.  The same evidence needed to prove Plaintiff's individual claims will be used to prove the claims of all class members.

35.    <u>Adequacy of Representation:</u>  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of complex consumer class action litigation.

36.    <u>Superiority:</u> The injury sustained by each class member, while meaningful on an individual basis, is not of such magnitude that it is economically feasible to prosecute individual actions against Defendants.  Even if it were economically feasible, requiring myriad injured plaintiffs to file individual suits

would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments.   By contrast, class treatment will present far fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

37.     Class certification also is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

## COUNT I
### Violation of the Video Rental Privacy Act
### (M.C.L. § 445.1711, *et seq.*)

38.     The allegations contained in the previous paragraphs are incorporated by reference.

39.     Plaintiff brings this claim individually and on behalf of the Class.

40.     Defendant is engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video records because it is a magazine/newspaper publisher that directly sells subscriptions to its customers.  *See* M.C.L. § 445.1712

41.     Plaintiff is a "customer" within the meaning of the VRPA because he purchased a subscription to publication from Defendant.  *See* M.C.L. § 445.1711(a).

42.    Defendant, in violation of M.C.L. § 445.1712, disclosed to third-parties a record or information concerning Plaintiff's purchase of his subscription that indicated Plaintiff's identity.

43.    Plaintiff never provided consent, in writing or otherwise, to disclose any record or information that identified him as subscribing Defendant's publication, and he did not receive prior notification that Defendant would disclose his record or information to any third-parties. *See* M.C.L. 445.1713(a), (d).

44.    Moreover, even if Defendant provided prior notification of its sale of Plaintiff's information, that notification is void because Defendant sold Plaintiff's information for purposes other than marketing its goods and services directly to Plaintiff.

45.    On information and belief, Defendant did not disclose Plaintiff's record or information pursuant to a court order, search warrant, or grand jury subpoena, and Defendant's disclosure was not made to collect payment for Plaintiff's subscription. *See* M.C.L. § 445.1713(b)-(c), (e).

46.    As a result of Defendant's unlawful conduct, Plaintiff, on behalf of himself and the Class, and pursuant to M.C.L. § 445.1715, seeks an injunction prohibiting Defendant's unlawful disclosure of its subscribers' personal information, actual damages, statutory damages, and costs and reasonable attorneys' fees.

## COUNT II
### Unjust Enrichment

13

47.    The allegations contained in the previous paragraphs are incorporated by reference.

48.    Plaintiff brings this claim individually and on behalf of the Class.

49.    Plaintiff and the Class conferred a benefit on Defendant by providing Defendant with their personal information, which Defendant then sold without the consent of Plaintiff and the class members, and by paying money for Defendant's magazine subscriptions.

50.    Defendant received the benefits conferred by Plaintiff and the Class when it compiled, disclosed and sold their personal information, and when it accepted the subscription payments of Plaintiff and the members of the Class.

51.    Defendant has knowledge of the benefits received because it is the entity that compiled, disclosed and sold the personal information of Plaintiff and the Class, and it is the entity that processes and fulfills the magazine subscriptions of Plaintiff and the Class.

52.    As explained above, the VRPA entitles Plaintiff and the Class to confidentiality in their personal information.

53.    Defendant violated this confidentiality by disclosing and selling the personal information of Plaintiff and the Class.

54.    Defendant should not be allowed to retain the monies it received as a result of its confidentiality violations.

14

55.     Accordingly, Plaintiff seeks an order, on behalf of himself and the Class, awarding Plaintiff and the Class restitution in an amount equal to what Plaintiff and the Class paid for their magazine subscriptions, along with disgorgement of all profits Defendant derived from the disclosure and sale of the personal information of Plaintiff and the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the members of the class, prays for:

a.     An order certifying the Class, appointing Plaintiff as representative of the Class, and designating undersigned counsel as Class counsel;

b.     An order awarding actual damages, or $5,000, whichever is greater, to Plaintiff and to each member of the Class;

c.     An order awarding injunctive and equitable relief as necessary to protect Plaintiff's and the Class's rights, and requiring Defendant to cease its unlawful practices as described herein;

d.     An order awarding attorney's fees and costs; and

e.     The provision of whatever other relief the Court deems just, equitable and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests trial by jury on all claims that can be so tried.

Dated: July 29, 2016                    Respectfully submitted,

                                        */s/*
                                        Daniel Myers
                                        THE LAW OFFICES OF
                                        DANIEL O. MYERS
                                        818 Red Drive, Suite 210
                                        Traverse City, MI  49684
                                        Telephone: (231) 943-1135
                                        dmyers@domlawoffice.com

                                        R. Bruce Carlson
                                        Gary F. Lynch
                                        Kevin Abramowicz
                                        CARLSON LYNCH SWEET
                                        KILPELA & CARPENTER, LLP
                                        1133 Penn Avenue, 5th Floor
                                        Pittsburgh, Pennsylvania 15222
                                        Telephone: (412) 322-9243
                                        Facsimile: (412) 231-0246
                                        bcarlson@carlsonlynch.com
                                        glynch@carlsonlynch.com
                                        kabramowicz@carlsonlynch.com

                                        James L. Ward, Jr.
                                        Robert S. Wood
                                        RICHARDSON, PATRICK,
                                        WESTBROOK & BRICKMAN, LLC
                                        P.O. Box 1007
                                        1037 Chuck Dawley Blvd., Bldg. A
                                        Mt. Pleasant, SC 29465
                                        jward@rpwb.com
                                        bwood@rpwb.com

                                        *Attorneys for Plaintiffs*