UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA FRISKE,

                                                    Case Number 16-12799
                          Plaintiff,                Honorable David M. Lawson

v.

BONNIER CORPORATION,

                          Defendant.
_____/

## OPINION AND ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

The parties jointly seek preliminary approval of a proposed class settlement. The named

plaintiff, Rebecca Friske, brought this action under Michigan's Video Rental Privacy Act (VRPA),

Mich. Comp. Laws § 445.1711 *et seq*., alleging that defendant Bonnier Corporation, a Delaware

corporation that sells subscriptions to magazines nationwide, sold and disclosed customer data to

third parties in violation of that state law. She sought damages and injunctive relief to prevent

further disclosure of the plaintiff's and other similarly situated class members' personal information.

On December 13, 2017, the Court conditionally certified a settlement class defined as:

> All Michigan residents who subscribed to or received one or more subscriptions to
> a magazine published by Bonnier between July 28, 2010 and the date of Preliminary
> Approval of the Agreement, and who did not purchase such subscriptions through
> a Third-Party Subscription Agent.

The parties anticipated that the class would consist of approximately 126,240 Michigan residents.

In their joint motion the parties propose a settlement consisting of the following elements:

- The defendant would establish a settlement fund of $3,000,000

- Class members would have the option to choose either a "cash distribution amount"
  of approximately $16 or a free one-year subscription to one of Bonnier's magazines

- If a class member does not submit a claim form, he will automatically receive a coupon or voucher for a free one-year subscription

- For each free subscription claimed or automatically received, Bonnier would receive a "credit" equal to the cash distribution amount (~$16), which will be deducted from the settlement fund

- Bonnier would include disclosure language on its publications and informational materials and would undertake commercially reasonable measures to honor any opt-out requests

- Settlement administration costs, which are not estimated in the proposed agreement, will be paid from the settlement fund

- Plaintiff Friske would receive an incentive award of up to $5,000, paid from the settlement fund

- Class counsel would receive fees of up to 30% of the settlement fund, which translates to $900,000

- Either party would have the right to rescind the agreement if more than 20% of class members opt for the cash distribution

The Court held a hearing on the parties' joint motion on January 16, 2018. In open court, the parties represented that they estimated administrative costs would approximate $100,000.

The VRPA forbids individuals engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings from knowingly disclosing to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer. Mich. Comp. Laws § 445.1712. At the time this lawsuit was filed, the statute stated that violators would be civilly liable to the customer identified in a disclosure for the greater of actual damages, or $5,000, and costs and reasonable attorney fees. Mich. Comp. Laws § 445.1715 (1989). Later, the statute was amended to eliminate the minimum damages allowance. *See* 2016 Mich. Pub. Act.

No. 92. The Act includes a safe-harbor provision that permits disclosure under certain conditions. *See* Mich. Comp. Laws § 445.1713.

The Federal Rules of Civil Procedure require court approval of settlements in class actions. Fed. R. Civ. P. 23(e). Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Rule 23(e)(2) states that a settlement that would bind class members may be approved "only after a hearing and on finding that it is fair, reasonable, and adequate." The approval of a proposed settlement ordinarily involves a two-stage procedure. "First, counsel submit the proposed terms of [the] settlement and the judge makes a preliminary fairness evaluation. . . . Once the judge is satisfied as to the . . . results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." Manual for Complex Litigation (4th ed.) §§ 21.632-.633 (2004); *see also Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001). The parties here are embarking on the first stage of the procedure.

In deciding whether to approve a class action settlement, the "ultimate issue" for the Court is whether the proposed settlement "is fair, adequate and reasonable." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). District courts must "appraise the reasonableness of particular class-action settlements on a case-by-case basis, in the light of all the relevant circumstances." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). "Several factors guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public

interest." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *see also Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016).

The Sixth Circuit has explained that in approving class action settlements, courts must carefully scrutinize whether the class representatives and class counsel have met their fiduciary obligations to protect class interests. *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). In the *Pampers* case, the Sixth Circuit cautioned that courts evaluating proposed class settlements must be attentive to terms that may incentivize class representatives to favor their own interests over those of absent class members, such as substantial banner awards to named plaintiffs, preferential treatment of class counsel, and generous concessions to settling defendants. *Ibid.* (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013); *In re Gen. Motors Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 788 (3d Cir. 1995); *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991); *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011); *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003)). The *Pampers* court warned that "the 'courts must be particularly vigilant' for 'subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *Ibid.* (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)).

At the hearing on the parties' joint motion, the Court expressed concern that many of the red flags identified by the *Pampers* court also were present in this proposed settlement. In *Pampers*, the court concluded that the settlement gave preferential treatment to class counsel while only perfunctory relief to unnamed class members. The named plaintiffs received an incentive award of $1,000 per affected child, while the unnamed plaintiffs benefitted "only from the labeling and

website changes and the one-box refund program (to the extent they [had] not done so already and [had] their original receipts and UPC codes)." *Id.* at 716. The agreement provided that class counsel would receive a fee of $2.73 million. *Ibid.* The court also found that although the Sixth Circuit has not weighed in on the general propriety of incentive awards, in that case the $1,000 payment made the class representatives more than whole and "provided a *disincentive* for the class members to care about the adequacy of relief afforded unnamed class members . . . ." *Id.* at 722. When the Court asked counsel in this case to address the factors in light of the discussion by the *Pampers* court, counsel responded that they were not familiar with the decision. Counsel did assert, however, that the proposed award to unnamed class members of approximately $16 or a free one-year subscription to any of the defendant's magazines compares favorably to other VRPA case settlements in this district, which they cited.

The Court took under advisement the parties' joint motion and directed them to file supplemental briefing on or before January 30, 2018. On January 29, they filed a joint motion for a sixty-day extension so that they could conduct additional discovery to support their proposed terms. The Court did not rule on the motion. On April 3, the parties submitted a status report indicating that they had reached an agreement regarding the scope of the additional discovery and that they intended to complete this discovery posthaste. On June 25, the parties filed a joint brief.


Citing case law from their joint motion and brief, counsel represented that the proposed award to unnamed class members is commensurate to or higher than figures awarded in other VRPA cases from this district. The Court does not read the settlements in those docketed cases that way. In *Halaburda v. Bauer Publishing Company., LP*, No. 12-12831 (Steeh, J.), the proposed agreement

estimated a cash payment of $175 to be distributed *pro rata* to all 23,000 class members who submitted a valid claim form. The settlement also contemplated a *pro rata* reduction or increase to settlement payment, up to an amount not to exceed $5,000, if any amounts remained in the settlement fund after allocating $175 to each claimant. After claims were submitted, the parties' recalculated the monetary relief to be approximately $74 per preson. (dkt. #66) (Pg ID 1240).

In *Coulter-Owens v. Rodale, Incorporated.*, No. 14-12688, 2016 WL 5476490 (E.D. Mich. Sept. 29, 2016) (Cleland, J.), the proposed agreement estimated a cash payment of $100 to be paid *pro rata* to 580,000 class members who submitted a valid claim. Unlike here, no portion of the $4.5 million fund reverted back to the defendant. At the time of final approval, approximately 53,000 class members submitted a valid claim form, making individual payments around $44. (dkt. #51) (Pg ID 715).

In *Kinder v. Meredith Corporation*, No. 14-11284 (Ludington, J.), the proposed agreement established a non-reversionary settlement fund of $7.5 million from which approximately 980,000 class members were entitled to a *pro rata* portion estimated to be $100. Because actual participation was higher than expected, at the time of final approval, class members were expected to receive a cash payment of $50 each. (dkt. #79) (Pg ID 2649).

In their lastest joint brief, the parties argue that unlike in *Pampers*, the proposed award to unnamed class members is tangible and meaningful. They explain that the settlement provides for two types of relief — a cash payment or free, one-year subscription — that were unavailable prior to settlement negotiations. They note that even if absent class members fail to submit a claim form, they still will receive a free one-year subscription to a Bonnier publication. The parties then proceed to highlight the convenience of the claims process, meaningful changes to Bonnier's written

disclosures and procedures, and the ease of opting out. They argue that the relief does not favor the named plaintiff and class counsel because the class is obtaining "real" relief, and class counsel is receiving just a third of what class counsel obtained in *Pampers*.

But under the proposed settlement in this case unnamed class members would receive at most approximately $16 or a free subscription to one of the defendant's magazines. That, perhaps, is better than nothing. But it is a far cry from the upside an individual class member might realize if he or she pursued an individual claim. At the time this lawsuit was filed, the statute had not been amended to eliminate that $5,000 minimum statutory damage provision. The complaint in this case was filed on July 29, 2016. The amendment became effective on July 31, 2016. In *Perlin v. Time, Inc.*, 237 F. Supp. 3d 623, 628-29 (E.D. Mich. 2017), the court held that the VRPA amendment that eliminated the $5,000 statutory damages provision is not retroactive.

Additionally, the parties argue that the discovery they recently engaged in supports the proposed settlement terms. Citing *Coulter-Owens v. Rodale, Inc.*, they argue generally that monetary relief available to class members under the VRPA likely overcompensates individual claimants with respect to actual damages. They do not discuss in detail the potential for statutory damages.

The parties further argue that formal discovery confirmed the strength of Bonnier's defenses, thereby diminishing the plaintiff's likelihood of success on the merits. Bonnier produced documentation of its relationship with CDS Global, Inc., a fulfillment company that manages subscribers for Bonnier. The parties argue that if this case were to proceed, Bonnier could assert that it did not sell its magazines "at retail," a required element for a valid claim under the VRPA. *See Coulter-Owens v. Time, Inc.*, 695 F. App'x 117, 123-24 (6th Cir. 2017) (concluding that

plaintiff's purchase of defendant's magazine subscription through an independent third-party subscription agent was not a sale "at retail" within the meaning of the VRPA). Moreover, the parties note that the banner page of one of Bonnier's publications includes disclosure language that the defendant believes satisfies the VRPA's disclosure requirements. They argue that an adverse determination on this issue would eliminate the claims of many class members.

In *Coulter-Owens*, Judge Cleland considered the defendant's "at retail" defense and noted that the decision in *Time* (then on appeal) "could all but extinguish Plaintiffs' hopes of succeeding." 2016 WL 5476490, at *3. He also noted that the money award of $44 to class members was "undoubtedly beneficial" when considering that actual damages "would in most cases be non-existent or nominal." *Ibid.* He concluded that "the likelihood of success on the merits is low, and balancing the rewards of this settlement against what class members 'would give up' favors approval." *Ibid.*

The same fairly cannot be said here. The parties' attempt to justify the proposed award to unnamed class members falls far short of the demanding standard set forth in *Pampers*. Although class members likely suffered no actual damages and Bonnier's defenses are strong, class counsel has not explained adequately why the class award in this case is much lower than in the cases cited in the motion for preliminary approval. Those cases were misrepresented in their briefing and at the hearing, and the supplemental brief does little to establish the fairness of the settlement in light of the gross disparity in the respective awards to class members and to plaintiff Friske and class counsel. Moreover, the parties' argument that class counsel's fee is only a third of what class counsel received in *Pampers* is not persuasive. In *Pampers*, class counsel received an absolute fee award of $2.73 million, whereas here, class counsel is to receive up to 30% of the fund, which nets

out to be approximately $900,000. No legitimate conclusions can be drawn from this apples-to-oranges comparison advanced by the parties.

In addition, other factors do not favor approval. At the hearing, counsel represented that there were no interrogatories sent, no depositions taken, and no other formal discovery conducted. Neither side took statements from or interviewed absent class members. There was no formal class discovery; only informal exchanges of information. The settlement was reached after a single-day mediation session in New York City, with "two or three" follow-up conference calls. The case is not particularly complex, although, as noted above, the defendant may have potential defenses against some of the class members. There has been no input, as far as the Court is aware, from absent class members.

Viewing all the circumstances, the Court cannot find that the parties have carried their burden of showing that the proposed settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). *See In re Dry Max Pampers Litig.*, 724 F.3d at 719 ("The burden of proving the fairness of the settlement is on the proponents.") (quoting 4 Newberg on Class Actions § 11:42 (4th ed.)). Nor can the Court avoid "[t]he reality . . . that this settlement benefits class counsel [and the named plaintiff] vastly more than it does the consumers who comprise the class." *Id.* at 721.

Accordingly, it is **ORDERED** that the joint motion for preliminary approval of class action settlement [dkt. #31] is **DENIED**.

It is further **ORDERED** that the motion to enlarge time for filing a supplemental brief [dkt. #36] is **DISMISSED as moot**.

It is further **ORDERED** that counsel for the parties appear before the Court for a status conference to discuss additional case management deadlines on **August 29, 2018 at 2:00 p.m.**

s/David M. Lawson

DAVID M. LAWSON

Dated: July 26, 2018          United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 26, 2018.

s/Susan Pinkowski

SUSAN PINKOWSKI