# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| REBECCA FRISKE, individually and on behalf of all others similarly situated, | Case No. 16-cv-12799-DML-EAS |
| Plaintiff, | District Judge David M. Lawson |
| v. | Magistrate Judge Elizabeth A. Stafford |
| BONNIER CORPORATION, a Delaware corporation, | |
| Defendant. | |

## PLAINTIFF'S MOTION TO CERTIFY
## CLASS AND APPOINT CLASS COUNSEL

COMES NOW, Plaintiff Rebecca Friske, by and through her undersigned counsel, and hereby moves the Court for an Order certifying this action as a class action, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure:

1.  Plaintiff seeks certification of a class defined as follows: "all Michigan residents who received one or more subscriptions to a magazine published by Bonnier between July 28, 2010 and the present, and who did not purchase such subscriptions through a Third-Party Subscription Agent."

2.  Plaintiff respectfully requests that she be appointed class representative and that her counsel, Carlson Lynch Sweet Kilpela & Carpenter, LLP and the Law Offices of Daniel O. Myers, be appointed as class counsel.

3. In support thereof, Plaintiff relies upon the Memorandum and exhibit filed contemporaneously herewith.

WHEREFORE, Plaintiff respectfully requests the Court GRANT her motion and enter Plaintiff's proposed order.

Dated: November 26, 2018    Respectfully,

*/s/ Gary F. Lynch*
Gary F. Lynch
Jamisen A. Etzel
CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15232
glynch@carlsonlynch.com
jetzel@carlsonlynch.com

Daniel Myers
THE LAW OFFICES OF
DANIEL O. MYERS
818 Red Drive, Suite 210
Traverse City, MI 49684
dmyers@domlawoffice.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| REBECCA FRISKE, individually and on behalf of all others similarly situated, | Case No. 16-cv-12799-DML-EAS |
| Plaintiff, | District Judge David M. Lawson |
| v. | Magistrate Judge Elizabeth A. Stafford |
| BONNIER CORPORATION, a Delaware corporation, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO CERTIFY CLASS AND APPOINT CLASS COUNSEL**

## STATEMENT OF ISSUES PRESENTED

1. Does the proposed Class meet Rule 23's requirements for class certification?

**Answer: Yes.**

2. Should Plaintiff's Counsel be appointed as Counsel for the Class?

**Answer: Yes.**

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Cases*

*Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524 (E.D. Mich. 2015)

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)

*Statutes*

Michigan Video Rental Privacy Act, M.C.L. § 445.1711, *et seq.*

*Rules*

Fed. R. Civ. P. 23

## I. INTRODUCTION

Plaintiff, Rebecca Friske ("Plaintiff"), on behalf of herself and the class she seeks to represent, alleges that Defendant, Bonnier Corporation ("Defendant" or "Bonnier"), violated the Michigan Video Rental Privacy Act ("VRPA"), M.C.L. § 445.1711, *et seq.*, by disclosing her and other similarly situated Michigan customers' personal magazine subscriber information to third parties without notice or consent.

Plaintiff seeks certification of the following class:

> All Michigan residents who received one or more subscriptions to a magazine published by Bonnier between July 28, 2010 and the present, and who did not purchase such subscriptions through a Third-Party Subscription Agent.

For the reasons explained below, Plaintiff respectfully requests that the Court grant her motion, certify the Class, appoint her Class Representative, and appoint her counsel as Class Counsel.

## II. BACKGROUND

### A. Statement of Facts

Bonnier publishes magazines that are sold to consumers throughout the United States, including to Michigan residents. *See* Amended Complaint, Dkt. No. 7 ¶¶ 2, 11 (Filed Nov. 7, 2016) (hereinafter "Compl."). Plaintiff, a Michigan resident, subscribes to *Boating* magazine, which is published by Defendant. *Id.* at ¶¶ 11, 33-34. In connection with its role as a publisher, Defendant obtained Plaintiff's personal information, including her name, address and subscription

1

history. *Id.* at ¶¶ 28-29. Defendant made certain of this information available to third parties. *Id.* at ¶¶ 25-27, 30-32, 36-38.

Plaintiff asserts that Defendant's conduct violates the VRPA.[1] *See* Compl. ¶¶ 49-57. The VRPA forbids individuals "engaged in the business of selling at retail, renting, or lending books or other written materials" from "disclos[ing] to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer." *See* M.C.L. § 445.1712 (text of statute in effect before July 31, 2016). The VRPA also provides a safe-harbor and allows subscriber information to be disclosed "[i]f the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer" and "[t]he person disclosing the information … informed the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." M.C.L. § 445.1713(d) (text of statute in effect before July 31, 2016). Plaintiff alleges that this safe-harbor does not apply because she did not consent to having her information disclosed, never received adequate notice of disclosure, and Defendant's disclosures were not for the exclusive purpose of marketing goods and services to its customers. *See* Compl. ¶¶ 30-33, 54-55.

---

[1] On July 31, 2016, after the filing of this lawsuit, several amendments to the VRPA took effect.

2

### B. Litigation history

Plaintiff filed this action on July 29, 2016, *see* Dkt. No. 1, and filed an amended complaint on November 07, 2016, *see* Dkt. No. 7. Bonnier filed a motion to dismiss on December 9, 2016, *see* Dkt. No. 11, which the parties fully briefed, *see* Dkt. Nos. 12, 17 and 20.

The Court entered a Scheduling Order on January 23, 2017, setting discovery dates and dates for class certification briefing, among other deadlines. *See* Dkt. No. 19. After that Order was entered, Plaintiff served discovery on Defendant and the parties engaged in settlement discussions. After reaching a proposed class settlement, the parties moved for certification of a settlement class, which the Court granted on December 13, 2017. Dkt. No. 30 (hereinafter "First Class Cert. Order"). The Court denied preliminary approval of the parties' proposed settlement on July 26, 2018. Dkt. No. 39. A status conference was held on October 22, 2018, and the Court set a new scheduling order. Dkt. No. 42. Since then the parties have continued discovery.

### III. ARGUMENT

To be certified, a class must meet the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-23 (1997). Under Rule 23(a), the class must satisfy numerosity, commonality, typicality and adequacy. *See* Fed. R. Civ. P. 23(a)(1)-(4). Under Rule

23(b)(3), the class must satisfy predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3). As explained below, the proposed Class satisfies each of the requirements of Rule 23(a) and (b)(3).

### A. Numerosity is satisfied

To satisfy numerosity, the class must be "so numerous that joinder of all members is impracticable." Rule 23(a)(1). "While no strict numerical test exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012).

Here, the Class easily satisfies numerosity, and the Court previously found this factor was satisfied. First Class Cert. Order at 2. According to Defendant's records, there are at least 126,240 Michigan residents who purchased a subscription to a magazine published by Bonnier and whose information was potentially "rented" to a third party. *See* Crone Dep. 10:16–15:8 (attached as Ex. A). A class consisting of approximately 126,240 is "substantial" and so numerous that joinder of all members is impracticable.

### B. Commonality is satisfied

To satisfy commonality, there must be "questions of law or fact common to the class." Rule 23(a)(2). "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136

4

S. Ct. 1036, 1045 (2016).  Only a "single common question" is required.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

Here, commonality is satisfied because the central legal and factual questions at issue are common to Plaintiff and the Class Members. The Court previously found this factor satisfied because "the claims of the absent class members will be identical." First Class Cert. Order at 2. Indeed, the central common legal questions include whether Defendant is "engaged in the business of selling at retail … books or other written materials," and whether Defendant disclosed "a record of information concerning the [Class Members'] purchase[s]" that "identifies the identity of the [Class Members]." *Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 533 (E.D. Mich. 2015).  The central common factual questions include whether Defendant, as a matter of policy, disclosed the personal subscriber information of Plaintiff and members of the Class.  *Id.*

Several potential affirmative defenses also raise common factual issues.  For example, the VRPA provides a safe-harbor, where a defendant can avoid liability if disclosures were made for the exclusive purpose of marketing goods and services directly to consumers, and the defendant provided written notice to the subscriber providing an opportunity to opt-out of the disclosure.  *See* M.C.L. § 445.1713(d) (text of statute in effect before July 31, 2016).  Whether Defendant's disclosures were for exclusive marketing purposes, and if so, whether Defendant gave Class

5

Members sufficient notice are questions common to the Class. *Coulter-Owens*, 308 F.R.D. at 533. For each of these reasons, commonality is satisfied.

### C. Typicality is satisfied

To satisfy typicality, "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Rule 23(a)(3). "[T]he representative's interests [must] be aligned with those of the represented group, and in pursing h[er] own claims, the named plaintiff [must] also advance the interests of the class members." *Young*, 693 F.3d at 542.

Typicality is satisfied here because Plaintiff is alleging Defendant discloses the personal subscriber information of all subscribers as a matter of policy. Because Defendant disclosed Class Members' information in the same way as Plaintiff's information, the pursuit of Plaintiff's claims will advance the interests of the Class Members. Similarly, and as explained in the commonality section, Plaintiff is alleging Defendant's disclosures were not made for the exclusive purpose of marketing goods and services directly to Class Members and that notice was insufficient. Plaintiff's pursuit of these issues is directly aligned with the interests of the Class Members. As a result, typicality is satisfied. *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 534-35. To be sure, this Court previously found this factor was satisfied because the claims of Plaintiff and the Class Members are identical. First Class Cert. Order at 3.

### D. Adequacy is satisfied

To satisfy adequacy, "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two criteria are relevant to this inquiry: "(1) the representative must have common interests with unnamed members of the class; and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543. Courts also must "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Id.*

Here, Plaintiff and each Class Member are Michigan subscribers of magazines published by Bonnier, and each had his or her personal subscriber information disclosed without consent. Plaintiff and each Class Member have identical interests in recovering for this unlawful disclosure and ensuring such disclosures do not continue. Accordingly, Plaintiff's interest is directly aligned with the Class, and she can adequately represent their interests.

Similarly, Plaintiff's Counsel have a wealth of experience litigating consumer class actions. Lynch Dec. ¶ 11 (Dkt. No. 25). Plaintiff's Counsel have been involved in numerous consumer protection lawsuits throughout the country and have the resources and skill to successfully litigate these cases. *Id.* at ¶ 12; *see also* Plaintiff's Counsel Firm Resumes at Dkt. Nos. 25-1 and 25-2.

In its order rejecting preliminary approval of the previous settlement, the Court suggested that Plaintiff's Counsel misrepresented other recent VRPA settlements. While Plaintiff's Counsel agrees that a more thorough explanation of the other VRPA settlements may have been warranted, Counsel respectfully disagrees that those cases were misrepresented at the hearing or in the briefing, in any way. The previous settlement proposed in this case, though not approved by the Court, includes a key structural difference from the other VRPA settlements: a direct distribution of the non-cash class relief to every class member. It is respectfully suggested that this structural difference actually demonstrates that Plaintiff and her Counsel are fully protecting the interests of absent Class Members by ensuring that each one is compensated under any settlement. But more importantly, this structural difference makes an apples to apples comparison to the other VRPA settlements much more subtle.

The reason for this is that, in explaining the value of the other settlements, class counsel in those cases only projected and represented to the courts the value to be given to each class member *who submitted a claim*. For this reason, the other VPRA settlements have the initial appearance of achieving higher individual relief. But, of course, that relief was only ultimately delivered to a small portion of

claimants, leaving the vast majority of class members with nothing.[2] In negotiating the prior settlement in this case, Plaintiff's Counsel insisted—at least with respect to the non-cash component of the settlement—that *all* class members be provided the relief, rather than rely upon a claims-made settlement structure. This assured that every class member would receive some benefit, rather than limiting the benefit to only the class members who submitted a claim form, which is typically a minority of the class.

In contrast to the other recent VRPA settlements, the first settlement here provided direct non-cash relief of approximately $16 to *every* class member. It is Plaintiff's Counsel's position that this key structural difference makes the prior settlement more favorable in contrast to every other recent VRPA settlement, all of which limited relief to class members who submitted claim forms. Tellingly, the per-class-member gross value of the previously proposed settlement *exceeded* the per-class-member relief of most of the other recent settlements, in some cases by a multiple of 2 or 3. By structuring the proposed settlement to distribute relief among the *entire* class, Plaintiff and her Counsel demonstrated that they fully protected the interests of absent Class Members, all of whom would have participated in the

---

[2] A full explanation of the differences between the proposed settlement and the other VRPA settlements, and why Plaintiff's Counsel maintains that the structure and relief proposed in this case was superior to previous settlements, can be found at Dkt. Nos. 40, 40-1, and 40-2.

9

settlement. Further, Plaintiff's Counsel took this approach knowing that they would be foregoing the benefits of being able to highlight a higher "per-person value" which could be obtained if a claims process were used and only claimants received distributions. Indeed, the average per-class-member recovery in the previous VRPA settlements, when spread across the entire class for purposes of a fair comparison, actually set a lower benchmark that hindered Plaintiff Counsel's attempts during the negotiation process to obtain higher relief for all Class Members. Accordingly, the Court's rejection of that settlement should not be a bar to finding Plaintiff Counsel as adequate.

For all of these reasons, Plaintiff and her Counsel have demonstrated their commitment to advocating for the interests of each Class Member, and that their individual interests do not diverge from those of the Class. As a result, adequacy is satisfied here.

### E. Predominance is satisfied

To satisfy predominance, "the questions of law or fact common to the class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc.*, 136 S. Ct. at 1045. "When one or more of the central issues in the action

10

are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.*

The common questions of law and fact in this case, discussed in the commonality section above, predominate over any questions affecting only individual Class Members. Again, the central factual inquiry in this case is whether the personal subscriber information of Class Members was disclosed, whether those disclosures were made solely for marketing purposes, and whether Class Members received sufficient notice regarding those disclosures. These common issues drown-out any individualized merits inquiries. Likewise, the common legal questions at issue, *i.e.* whether Defendant sells magazines "at retail," and whether Defendant disclosed the identity of Class Members for purposes of the VRPA, predominate over any legal issues specific to any individual Class Member.

Because the central factual and legal questions in this case are susceptible to generalized class-wide proof, and because Defendant is engaged in a common course of conduct with respect to the Class as a whole, predominance is satisfied. *See, e.g.*, *Coutler-Owens*, 308 F.R.D. at 536. Indeed, this Court previously found predominance was met in this action. First Class Cert. Order at 4.

11

### F. Superiority is satisfied

To satisfy superiority, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Use of the class method is warranted [where] … class members are not likely to file individual actions [and] the cost of litigation … dwarf[s] any potential recovery." *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 861 (6th Cir. 2013). "Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Young*, 693 F.3d at 545. Moreover, where few class members are likely to be aware of the allegedly harmful conduct, class litigation is warranted. *Id.* ("Given the unlikelihood that many [class members] will discover, let alone attempt to vindicate, their injury … the district court did not abuse its discretion in finding that class litigation was a superior method of adjudicating [the p]laintiffs' claims.").

As demonstrated above, the central questions at issue in this litigation are common to Plaintiff and each Class Member. Furthermore, there is a high likelihood that most Class Members are not even aware of their injuries, and each would almost certainly find the cost of individual litigation much too high to pursue a remedy. For all of these reasons, a class action is superior to any available alternatives, and superiority is satisfied. Again, this Court previously held that the superiority factor was satisfied in this action. First Class Cert. Order at 4.

## IV. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Courts certifying a class for purposes of litigation or settlement "must appoint class counsel." Fed. R. Civ. P. 23(g)(1). The Court must consider: (1) the work counsel has done in identifying or investigating the claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted; (3) counsel's knowledge of applicable law; and (4) the resources counsel will commit to representing the settlement class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed in the adequacy section, Plaintiff's Counsel have extensive experience litigating consumer class actions and have demonstrated their commitment to fairly representing the interests of each absent Class Member. As such, the Court should appoint Carlson Lynch Sweet Kilpela & Carpenter, LLP, and the Law Offices of Daniel O. Myers as Class Counsel.

## V. CONCLUSION

For the reasons contained herein, Plaintiff respectfully requests that the Court grant her motion, (i) certifying the proposed Class; (ii) appointing Plaintiff as Class Representative; and (iii) appointing Plaintiff's Counsel Daniel Myers and Gary Lynch as Class Counsel.

Dated: November 26, 2018               Respectfully,

Gary F. Lynch
Jamisen A. Etzel
CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15232
glynch@carlsonlynch.com
jetzel@carlsonlynch.com

Daniel Myers
THE LAW OFFICES OF
DANIEL O. MYERS
818 Red Drive, Suite 210
Traverse City, MI 49684
dmyers@domlawoffice.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on Monday, November 26, 2018, I electronically filed the foregoing document with the Clerk of Court using the Court's ECF filing system, which will send notification to the following:

Francis A. Zacherl
Daniel T. Stabile
Shutts & Bowen LLP
200 South Biscayne Blvd., Suite 4100
Miami, FL 33131
Telephone: 305-415-9063
Facsimile: 305-347-7714
fzacherl@shutts.com
dstabile@shutts.com

John J. Gillooly
Garan Lucow
1155 Brewery Park Blvd., Suite 200
Detroit, MI 48207
Telephone: 313-446-5501
jgillooly@garanlucow.com

                                                */s/ Gary F. Lynch*
                                                Gary F. Lynch