## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

REBECCA FRISKE, individually and on
behalf of all others similarly situated,

Case No. 16-cv-12799-DML-EAS

Plaintiff,

District Judge David M. Lawson
Magistrate Judge Elizabeth A.
Stafford

v.

BONNIER CORPORATION, a Delaware
corporation,

Defendant.

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

COMES NOW, Plaintiff Rebecca Friske, by and through her undersigned counsel, and hereby moves the Court under Fed. R. Civ. P. 23(e) for preliminary approval of a class action settlement agreement reached between Plaintiff and Defendant Bonnier Corp., which is attached as Exhibit A. Plaintiff also requests that the Court approve the proposed form of notice to the class, authorize notice to be sent to the class, and schedule a final fairness hearing. Defendant does not oppose the relief requested herein. In support of her motion, Plaintiff relies upon the Memorandum filed contemporaneously herewith.

WHEREFORE, Plaintiff respectfully requests the Court GRANT her motion and enter her proposed order.

Dated: March 18, 2019

Respectfully,

*/s/ Gary F. Lynch*
Gary F. Lynch
Jamisen A. Etzel
CARLSON LYNCH, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15232
glynch@carlsonlynch.com
jetzel@carlsonlynch.com

Daniel Myers
THE LAW OFFICES OF
DANIEL O. MYERS
818 Red Drive, Suite 210
Traverse City, MI 49684
dmyers@domlawoffice.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| REBECCA FRISKE, individually and on behalf of all others similarly situated, | Case No. 16-cv-12799-DML-EAS |
| Plaintiff, | District Judge David M. Lawson<br>Magistrate Judge Elizabeth A. Stafford |
| v. | |
| BONNIER CORPORATION, a Delaware corporation, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## STATEMENT OF ISSUES PRESENTED

1.      Based on preliminary review, is the proposed Settlement fair, adequate, reasonable and sufficient to warrant notice to the proposed Class?

**Answer: Yes.**

2.      Does to proposed notice satisfy the requirements of Rule 23 and Due Process?

**Answer: Yes.**

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases**

*In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013)

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*Simpson v. Citizens Bank*, No. 12-cv-10267, 2013 WL 12122431 (E.D. Mich. Sept. 5, 2013)

**Statutes**

Michigan Video Rental Privacy Act, M.C.L. § 445.1711, *et seq.*

## I.      INTRODUCTION

In this case, Plaintiff, Rebecca Friske ("Plaintiff"), alleges Defendant, Bonnier Corporation ("Defendant" or "Bonnier"), violated the Michigan Video Rental Privacy Act ("VRPA"), M.C.L. § 445.1711, *et seq.* by disclosing her and other Michigan customers' personal magazine subscriber information to third parties without notice or consent. After years of litigation and months-long negotiations, the parties have reached a proposed settlement, which, if approved by the Court, would resolve the claims of Plaintiff and other similarly situated Michigan persons who subscribed to magazines published by Defendant.

The proposed settlement establishes a $2,150,000 settlement fund through which the Settlement Class Members can submit a claim to receive a pro rata cash payment. Settlement Class Members who choose not to submit a claim will still receive relief in the form of a free, one-year subscription to a Bonnier publication, meaning all Settlement Class Members will receive some form of relief.  Defendant has also agreed, going forward, to provide enhanced written notice of customer rights under the VRPA that will be visible to prospective customers prior to purchasing a subscription.

Securing the above-mentioned relief for the Class, considering the risks, costs, time and uncertainty attendant to ongoing litigation of these claims, and class actions generally, exceeds what is required for preliminary approval.  For the reasons

1

explained below, Plaintiff respectfully requests that the Court grant the motion for preliminary approval, permit dissemination of notice to the Settlement Class, and set a date for a final fairness hearing.

## II.   BACKGROUND

### A.   Summary of Plaintiff's Allegations

Defendant publishes magazines that are sold to consumers throughout the United States, including to Michigan residents.  *See* Amended Complaint, Dkt. No. 7 ¶¶ 2, 11 (Filed Nov. 7, 2016) (hereinafter "Compl.").  Plaintiff, a Michigan resident, subscribes to *Boating* magazine, which is published by Defendant.  *Id.* at ¶¶ 11, 33-34.  In the process of selling her a magazine subscription, Plaintiff alleges Defendant collected Plaintiff's personal information, including her name, address and subscription history.  *Id.* at ¶¶ 28-29.  Plaintiff further contends Defendant made Plaintiff's information available to third parties without her consent.  *Id.* at ¶¶ 25-27, 30-32, 36-38.

Plaintiff alleges Defendant's conduct violates the Michigan Video Rental Privacy Act ("VRPA"), M.C.L. § 445.1711, *et seq.  See* Compl. ¶¶ 49-57.  The VRPA forbids individuals "engaged in the business of selling at retail, renting, or lending books or other written materials" from "disclos[ing] to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the

customer." *See* M.C.L. § 445.1712 (text of statute in effect before July 31, 2016). The VRPA also provides a safe-harbor and allows subscriber information to be disclosed "[i]f the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer" and "[t]he person disclosing the information … informed the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." M.C.L. § 445.1713(d) (text of statute in effect before July 31, 2016). Plaintiff alleges that this safe-harbor does not apply because she did not consent to having her information disclosed, never received adequate notice of disclosure, and Defendant's disclosures were not for the exclusive purpose of marketing goods and services to its customers. *See* Compl. ¶¶ 30-33, 54-55.

## C.    Litigation History, Mediation, and Settlement Negotiations

Plaintiff originally filed this action on July 29, 2016, and later filed an amended complaint on November 07, 2016. *See* Dkt. Nos. 1, 7. Bonnier filed a motion to dismiss on December 9, 2016, which the parties have fully briefed. *See* Dkt. Nos. 11, 12, 17 and 20. The Court entered a scheduling order on January 23, 2017, which set deadlines for discovery and class certification briefing. *See* Dkt. No. 19. Subsequently, Plaintiff served discovery on Bonnier, the parties began settlement talks, and ultimately agreed to mediate the case. Lynch Decl. ¶¶ 5–8.

After a proposed settlement (the "Prior Settlement") was reached at mediation, Plaintiff moved for conditional certification of a settlement class, which the Court granted on December 13, 2017. *See* Dkt. No. 30. However, the Court ultimately denied preliminary approval of the Prior Settlement on July 26, 2018. Dkt. No. 39. The Court held a status conference on October 22, 2018, and issued an amended scheduling order. *See* Dkt. No. 42. Pursuant to that order, the parties continued to conduct discovery and Plaintiff moved to certify a litigation class on November 26, 2018. Dkt. No. 48; Lynch Decl. ¶ 9. After Plaintiff moved for class certification, the parties agreed to hold a second mediation in January 2019. *See* Lynch Dec. ¶¶ 9–10.

The second mediation was conducted by former Chief Judge Gerald E. Rosen, who asked the parties to exchange mediation briefs in preparation for the mediation. Lynch Dec. ¶ 10. After a full day of mediation on January 3, 2019, the parties agreed in principle to resolve this case on a classwide basis pursuant to the terms of Judge Rosen's Mediator's Proposal. *Id.* at ¶ 11. The parties have since memorialized those terms and executed a formal agreement (the "Settlement Agreement" or "SA," attached as Exhibit A). *Id.* Before finalizing the Settlement Agreement, the Parties engaged in additional discussions related to the terms of the Agreement, and Class Counsel conducted additional discovery to ensure information regarding the class

size was accurate.  *Id.*  The Parties now submit the proposed settlement to the Court for preliminary approval of the Settlement Agreement and Notice Plan.

## III.   THE SETTLEMENT TERMS

### A.   Class Definition

The Settlement Class is defined as "all Michigan residents who subscribed to or received one or more subscriptions to a magazine published by Bonnier between July 28, 2010 and the date of Preliminary Approval of the Agreement, and who did not purchase such subscriptions through a Third-Party Subscription Agent."  (SA ¶ 1.35).  Excluded from the Class are: (i) any Judge or Magistrate presiding over the Action and members of their families, (ii) Bonnier, its subsidiaries, parent companies, successors, predecessors, and any entity in which Bonnier or its parent companies have controlling interests, along with their current or former officers, directors, agents, attorneys, and employees, and (iii) persons who validly "opt-out" of the Agreement and their legal representative, successors or assigns.  (Id).

### B.   Relief to the Class

Bonnier has agreed to create a Settlement Fund of $2,150,000 (SA ¶ 1.37).  This fund shall be used to pay administration expenses, estimated to be about $100,000 (SA ¶ 1.33, Lynch Decl. ¶ 20), an incentive award to the Representative Plaintiff of $2,500 (SA ¶¶ 1.21, 7.3), and a fee award of $625,000, or approximately 29% of the cash fund.  (SA ¶ 7.1).  The remaining funds shall be distributed pro rata

among Class Members who submit a valid claim form.  (SA ¶ 2.1.1).  Class Counsel estimates these payments will be between $43 and $86 for each Class Member who submits a valid claim, although the final number could be higher or lower depending upon the number of Class Members who choose to submit claims.  (See Lynch Decl. Exhibit A).  No part of the cash fund shall revert to Bonnier.

In addition to the Settlement Fund, Bonnier has also agreed to send every Settlement Class Member who does not submit a claim form a voucher or purchase code for a free, one-year subscription to the Bonnier magazine of his or her choice. (SA ¶¶ 1.20, 2.1.2).

Bonnier also has agreed to retain its disclosure language on all Bonnier publications and undertake commercially reasonable measures to honor any opt-out request made pursuant to the disclosure.  (SA ¶ 2.2.1).  Bonnier will also include the disclosure language in informational materials used for new magazine subscriptions so consumers will receive the disclosure before subscribing to any Bonnier publication and have the ability to timely exercise their rights under the VRPA. (SA ¶ 2.2.2).

### C.     Release

In exchange for the relief described above, Defendant will receive a full release for all claims under the VRPA (or other similar causes of action) that have

or could have been brought through the date of Preliminary Approval. (SA ¶¶ 1.30, 3.1).

### D.    Notice and Administration Costs

The costs of administering the settlement and of sending notice as set forth in the Agreement, or required by the Court, shall be paid from the Settlement Fund. (SA ¶ 1.33).

### E.    Incentive Award

To recognize the efforts of Plaintiff Friske in achieving the aforementioned relief for the Settlement Class, and as reasonable compensation for her time and effort, Defendant has agreed that Plaintiff may receive, subject to Court approval, an incentive award of up to $2,500 from the Settlement Fund. (SA ¶ 7.3). Defendant will not oppose any request limited to this amount. (*Id*.).

### F.    Attorneys' Fees and Costs

Defendant has agreed the Settlement Fund may be used to pay Class Counsel reasonable attorneys' fees and to reimburse expenses incurred in this case, in an amount to be approved by the Court. (SA ¶ 7.1). Class Counsel have agreed to petition the Court for no more than $625,000, which represents approximately 29% of the Settlement Fund, and Defendant has agreed not to oppose any such request. (*Id.*).

## V.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Review and approval of class settlements involves a two-step process: "(1) preliminary approval of the proposed settlement and the proposed class and the method and form of class notice; and (2) final approval of the settlement following notice and hearing to determine fairness." *In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010); Manual for Complex Litig., § 21.632, at 320 (4th ed. 2004) (similar).

"At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the 'range of reasonableness.'" *Simpson v. Citizens Bank*, No. 12-cv-10267, 2013 WL 12122431, at *3 (E.D. Mich. Sept. 5, 2013). "This bar is low[.]" *Id.* "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Id.*

In deciding whether to grant preliminary approval courts generally evaluate "procedural" factors, which focus on the nature of the settlement negotiations, and "substantive" factors, which focus on the terms of the agreement itself. *See* NEWBERG ON CLASS ACTIONS § 13:14 (5th ed. 2017). For the reasons discussed

below, the procedural and substantive elements of this settlement warrant preliminary approval.

### A.   The Procedural Factors Warrant Preliminary Approval

"The primary procedural factor courts considered in determining whether to preliminarily approve a proposed settlement is whether the agreement arose out of arms-length, non-collusive negotiations." NEWBERG ON CLASS ACTIONS § 13:14 (5th ed. 2017). *See also In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013). Generally, "[c]ourts … find an absence of collusion when settlement negotiations are conducted by a third-party mediator." NEWBERG ON CLASS ACTIONS § 13:14 (5th ed. 2017).

Initially, the parties engaged in adversarial litigation, including the filing and briefing of motions to dismiss. After the first proposed settlement was rejected, litigation resumed and Plaintiff filed an adversarial motion for class certification. (Dkt. No. 48). While that motion was pending, the parties agreed to conduct a facilitative mediation with former Chief Judge Gerald E. Rosen.  Importantly, the Settlement Agreement stemmed from a mediator's proposal Judge Rosen made at the end of that day-long mediation, as well as several facilitative discussions thereafter, and months of back and forth negotiations.  Lynch Decl. ¶¶ 10–13. Throughout this process, the parties exchanged documents and other information in order to properly evaluate their claims and defenses.  *Id.* at ¶¶ 11–14.  After the

mediation with Judge Rosen, Class Counsel conducted even more discovery to ensure the class size was accurate. *Id.* at ¶ 11–12. After months of adversarial litigation, two mediations, and extensive settlement negotiations, the Parties now have sufficient information to make reasoned decisions regarding settlement, and there are no grounds on which procedural unfairness could rest. Lynch Decl. ¶ 13; *see, e.g.*, *Hillson v. Kelly Services Inc.*, No. 15-cv-10803, 2017 WL 279814, at *6 (E.D. Mich. Jan. 23, 2017).

### B.   The Substantive Factors Warrant Preliminary Approval

"The starting place for understanding the substantive requirements for preliminary approval is in reviewing the substantive requirements for *final* approval." NEWBERG ON CLASS ACTIONS § 13.15 (5th ed. 2017). The substantive requirements relevant for final approval in the Sixth Circuit include:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). In considering these factors, "it is neither required nor is it possible for a district court to determine that the proposed settlement is the fairest possible resolution of the claims of every individual class member; rather, the court need only determine whether the

settlement taken as a whole, is fair, adequate and reasonable." *Simpson*, 2013 WL 12122431, at *4.

For the reasons explained below, a preliminary analysis of the final fairness factors demonstrates the proposed settlement is within the "range of reasonableness" and preliminary approval should be granted.

### i.    The Risk of Fraud or Collusion

This factor is discussed more fully at Section VI.A. *supra*. Because the parties have engaged in adversarial discovery and litigation, months-long settlement negotiations, and the Settlement Agreement is the product a mediator's proposal made by former Chief Judge Rosen, Lynch Decl. ¶¶ 8–12, there is no risk of fraud or collusion. As such, this factor supports preliminary approval.

### ii.    The Complexity, Expense, and Likely Duration of the Litigation

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphia Corp. Securities, Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008). Generally speaking, "most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). "For class actions in particular, courts view

settlement favorably because it avoids the costs, delays and multitudes of other problems associated with them." *In re Delphia Corp.*, 248 F.R.D. at 497.

Had the parties not reached the proposed settlement, the Court would have ruled on Defendant's motion to dismiss, the parties would have continued to conduct formal, contested discovery (as well as third-party discovery), and ultimately filed contested motions for summary judgment before proceeding to trial. This process would be costly and time-consuming, and pose risks that a class would not be certified and that class members would recover nothing. Furthermore, even if a litigation class was certified, and liability was established, Defendant would in all likelihood appeal any adverse judgment, and because of the amount of statutory damages at issue, argue for a reduction in aggregate damages based on due process concerns.

The proposed settlement avoids this uncertainty and affords the Settlement Class Members prompt and fair resolution of their claims. This negotiated resolution is accomplished years earlier and at a much lower cost than any judgment awarded after protracted litigation. As a result, this factor weighs in favor of preliminary approval.

### iii.     The Amount of Discovery Engaged in By the Parties

"That the parties conducted their investigation through informal discovery, or based on information assembled in a related case, is not unusual or problematic, so

long as they and the court have adequate information in order to evaluate the parties'
relative positions." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 538, 598 (E.D.
Mich. 2006) (collecting cases).

Here, the parties have engaged in the formal and informal exchange of
documents and information, both during litigation and amid their ongoing settlement
negotiations, to ensure they fully developed the facts of the case and can value their
respective legal positions. Lynch Decl. ¶¶ 11–13. Plaintiff took two Rule 30(b)(6)
depositions of Defendant, served document requests, and received both formal and
informal responses and document productions from Bonnier. *Id.* After the proposed
settlement was reached, Class Counsel conducted further discovery, including
serving three third party subpoenas and receiving additional information and
documents from Bonnier and the third parties, to ensure that Defendant's
information regarding the size of the Settlement Class was accurate. *Id.* at ¶¶ 11–12.
As the parties have now exchanged sufficient information to apprise themselves and
the Court of the propriety of the terms of the Settlement Agreement, this factors
weighs in favor of preliminary approval.

### iv.    The Likelihood of Success on the Merits

Courts "cannot judge the fairness of a proposed compromise without
weighing the plaintiff's likelihood of success on the merits against the amount and
form of the relief offered in the settlement." *Shane Grp., Inc. v. Blue Cross Blue*

*Shield of Mich.*, 925 F.3d 299, 309 (6th Cir. 2016).   Courts must "specifically examine what the unnamed class members would give up in the proposed settlement, and then explain why—given their likelihood of success on the merits—the tradeoff embodied in the settlement is fair to unnamed members of the class." *Id.*

While Plaintiff is confident in her claims, she acknowledges that the likelihood of success on the merits faces obstacles. Specifically, even though Settlement Class Members did not purchase their subscriptions through third-party subscription agents, they also did not purchase their magazines directly from Defendant.  Defendant instead used a third-party agent to directly interface with the Settlement Class Members. That third party handled subscriber orders, managed subscriber files, accepted payments, and dealt directly with subscriber complaints. Lynch Decl. ¶ 15.  Those facts could take Defendant outside of the reach of the VRPA, which requires defendants sell their publications "at retail." *See* M.C.L. § 445.1712 (text of statute in effect before July 31, 2016); *Coulter-Owens v. Time, Inc.*, 695 F. App'x 117, 121–24 (6th Cir. 2017) (affirming dismissal of action where the defendant's magazines not sold "at retail").

Defendant also placed opt-out notices on its magazine publications, which provided contact information for its customers to opt-out of any disclosure of their personal information. Lynch Decl. ¶ 15.  If that notice is deemed sufficient, it would mean Defendant falls within the VRPA opt-out safe-harbor.  *See* M.C.L. §

445.1713(d) (text of statute in effect before July 31, 2016).  And even if Plaintiff were to prevail on those issues, and secure aggregate classwide relief, Defendant is likely to appeal any adverse judgment.  And in light of the amount of statutory damages potentially available to the Settlement Class, Defendant will undoubtedly argue for a reduction of damages on due process grounds.  *See, e.g.*, *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) ("[T]he potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues.").

When viewed against this backdrop of uncertainty at summary judgment, trial, and any appeal, the classwide relief provided by the Settlement Agreement is fair, adequate, and reasonable.  Each Settlement Class Member who submits a valid claim form will be entitled to a pro-rata share of the Settlement Fund, estimated at between $43 and $86 after fees and administrative costs.  Additionally, each settlement Class Member who fails to submit a claim form will receive a voucher or purchase code for a free, one-year subscription to the Bonnier magazine of his or her choice.  And Defendant has agreed to ensure all customers going forward will receive notice of their right to opt-out of any marketing disclosures before they subscribe to Defendant's publications, so consumers can make an informed decision to exercise their rights under the VRPA.  SA ¶¶ 2.2.1, 2.2.2.

Plus, the proposed settlement provides relief that compares favorably to other VRPA settlements that have been granted final approval in this district. *See, e.g.*, *Halaburda v. Bauer Publishing Co., LP*, No. 12-cv-12831, Dkt. No. 68 (E.D. Mich. January 8, 2015) (granting final approval to VRPA class settlement with comparable pro rata relief but no default subscription for class members who failed to submit claims); *Coulter-Owens v. Rodale, Inc*., No. 14-cv-12688, Doc. 54 (E.D. Mich. Sept. 29, 2016) (same); *Kinder v. Meredith Corporation*, No. 14-cv-11284, Dkt. No. 81 (E.D. Mich. May 18, 2016) (same).   Moreover, it far surpasses other privacy class settlements where payment was made by *cy pres* rather than directly to the class. *Lane v. Facebook, Inc.*, 696 F.3d 811, 820-22 (9th Cir. 2012) (granting final approval for settlement of claims with only form of monetary payment to *cy pres* fund); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6-7 (N.D. Cal. Mar. 18, 2013) (similar); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3-5 (N.D. Cal. June 2, 2011) (similar).

In short, the relief provided in the Settlement Agreement is neither "perfunctory" nor premised upon a "fictive world." *See In re Dry Max Pampers Litigation*, 724 F.3d at 721.  Here, class members are entitled to valuable relief in the form of cash or free magazine subscriptions, the latter of which class members presumptively value and enjoy as current or previous subscribers of Bonnier magazines.  Furthermore, class members can obtain monetary relief through a simple

claims procedure—or subscription relief by doing nothing at all. Finally, class members are provided genuine injunctive relief through the addition of new notice language in marketing materials, and the retention of disclosures in Bonnier publications, that together ensure notice is given to customers at all stages of a magazine sale. And the settlement provides for mandatory opt-out procedures that Bonnier must undertake when class members choose to protect their privacy rights.

Since Plaintiff and the Settlement Class face significant risks at summary judgment, at trial and on appeal, the relief provided by the Settlement Agreement, when weighed against those risks, is within the range of reasonableness required for preliminary approval.

### v.    The Opinions of Class Counsel and the Class Representative

"The judgment of the parties' counsel that the settlement is in the best interest of the settling parties is entitled to significant weight, and supports the fairness of the class settlement." *IUE-CWA*, 238 F.R.D. at 597. Here, Plaintiff's and Defendant's counsel are reputable and experienced in complex class action litigation, and have adequately assessed the strengths of their claims and defenses, including detailed analysis of similar settlements. Lynch Decl. ¶¶ 13, 16–19. As such, this factor weighs in favor of preliminary approval.

### vi.    The Reaction of Absent Class Members

Since notice of the new Settlement Agreement has not yet been issued, it is not possible to gauge this factor at this time.

### vii.    The Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003). Here, settlement will prevent prolonged litigation and conserve judicial resources, both at the district and appellate court levels. Settlement will also further the aims of the VRPA by ensuring Defendant's customers are given notice rights to opt-out of any marketing disclosures prior to becoming a subscriber to any of Defendant's magazines. As a result, this factor favors preliminary approval.

## VII.   THE NOTICE PLAN SHOULD BE APPROVED

"Before ratifying a proposed settlement agreement, a district court also must direct notice in a reasonable manner to all class members who would be bound by the settlement." *Intl. Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007); Fed. R. Civ. P. 23(e)(1). "The notice should be reasonably calculated, under all the circumstances,

to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*

Here, the Notice Plan consists of multiple parts. First, the Settlement Administrator will send notice directly to each Settlement Class Member by U.S. Mail, providing information regarding the Settlement Agreement and directing Class Members to a website for additional information. SA ¶ 4.1.2; Ex. 3. Second, the Settlement Administrator will create and maintain a website that will display notice of the Settlement Agreement and important deadlines, provide access to Court documents, and allow Class Members to file claims forms online. SA ¶ 4.1.3. Finally, the Settlement Administrator will provide notice of the Settlement Agreement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. SA ¶ 4.1.4. All forms of the notice apprise Class Members of their rights to exclude themselves from the settlement, to object, and to appear at the fairness hearing. Accordingly, the proposed Notice Plan provides notice in a reasonable manner to all class members, and should be approved by the Court.

## VIII. CONCLUSION

For the reasons discussed herein, Plaintiff respectfully requests that the Court (1) preliminarily approve the proposed settlement; (2) approve the proposed notice

and authorize the Parties to initiate the notice plan; and (3) schedule a final fairness hearing.

Dated: March 18, 2019

Respectfully,

Gary F. Lynch
Jamisen A. Etzel
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15224
glynch@carlsonlynch.com
jetzel@carlsonlynch.com

Daniel Myers
**THE LAW OFFICES OF
DANIEL O. MYERS**
4020 Copper View Ste. 225
Traverse City, MI  49684
Phone: (231) 943-1135
Fax: (231) 368-6265
dmyers@domlawoffice.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 18, 2019, I electronically filed the foregoing document with the Clerk of Court using the Court's ECF filing system, which will send notification to the following:

Daniel T. Stabile
**Shutts & Bowen LLP**
200 South Biscayne Blvd., Suite 4100
Miami, FL 33131
Telephone: 305-415-9063
Facsimile: 305-347-7714
dstabile@shutts.com

John J. Gillooly
**Garan Lucow Miller P.C.**
1155 Brewery Park Blvd., Suite 200
Detroit, MI 48207
Telephone: 313-446-5501
jgillooly@garanlucow.com

*/s/ Gary F. Lynch*
Gary F. Lynch