## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| REBECCA FRISKE, individually and on behalf of all others similarly situated, | Case No. 16-cv-12799-DML-EAS |
| Plaintiff, | District Judge David M. Lawson<br>Magistrate Judge Elizabeth A. Stafford |
| v. | |
| BONNIER CORPORATION, a Delaware corporation, | |
| Defendant. | |

## PLAINTIFF'S MOTION FOR FINAL
## APPROVAL OF CLASS ACTION SETTLEMENT

COMES NOW, Plaintiff Rebecca Friske, by and through her undersigned counsel, and hereby moves the Court under Fed. R. Civ. P. 23(e) for final approval of a class action settlement agreement reached between Plaintiff and Defendant Bonnier Corp. Defendant does not oppose the relief requested herein. One class member has filed an objection. (Dkt. No. 74). In support of her motion, Plaintiff relies upon the Memorandum and Declarations filed contemporaneously herewith.

WHEREFORE, Plaintiff respectfully requests the Court GRANT her motion, overrule/deny the sole objection, and enter her proposed order, including final judgment.

Dated: September 3, 2019          Respectfully submitted,

*/s/ Gary F. Lynch*
Gary F. Lynch
Jamisen A. Etzel
CARLSON LYNCH, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15232
glynch@carlsonlynch.com
jetzel@carlsonlynch.com

Daniel Myers
THE LAW OFFICES OF DANIEL O.
MYERS
4020 Copper View Ste. 225
Traverse City, MI 49684
Phone: (231) 943-1135
Fax: (231) 368-6265
dmyers@domlawoffice.com

*Attorneys for Plaintiff*

ii

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| REBECCA FRISKE, individually and on behalf of all others similarly situated, | Case No. 16-cv-12799-DML-EAS |
| Plaintiff, | District Judge David M. Lawson |
| v. | Magistrate Judge Elizabeth A. Stafford |
| BONNIER CORPORATION, a Delaware corporation, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## STATEMENT OF ISSUES PRESENTED

1.     Is the parties' proposed class action settlement fair, reasonable, and adequate, warranting final approval and entry of judgment?

**Answer: Yes.**

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases**

*Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524 (E.D. Mich. 2015).

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012).

**Statutes**

Michigan Video Rental Privacy Act, M.C.L. § 445.1711, *et seq.*

**Rules**

Fed. R. Civ. P. 23

## I.       INTRODUCTION

After successful implementation of the Court-approved notice plan, Plaintiff Rebecca Friske ("Plaintiff") now moves for final approval of the class action Settlement Agreement reached with Defendant Bonnier Corporation ("Defendant" or "Bonnier"). This Settlement Agreement fully and finally resolves claims that Bonnier violated the Michigan Video Rental Privacy Act ("VRPA"), M.C.L. §§ 445.1711, *et seq*., by disclosing Plaintiff's and other Michigan customers' personal magazine subscriber information to third parties without notice or consent.

Since the Court granted preliminary approval on June 25, 2019 (Dkt. No. 66), Plaintiff, Defendant, and the Settlement Administrator successfully implemented the Court-approved notice plan, delivering direct notice to 97.795% of class members and receiving a claim rate of 10.92%. *See* Jeter Decl. ¶¶ 3–6, 12–13; Lynch Decl. ¶¶ 17–18. Based on the projected final number of claims, the cash payout to each claimant under the settlement will be approximately $76–79, which is near the top of the range initially projected by Class Counsel in the class notice. There is only one objection to the settlement, and it is without merit for the reasons described below and in Plaintiff's separate, forthcoming response. Only three class members requested exclusion. Jeter Decl. ¶ 14; Lynch Dec. ¶ 20.

For the reasons explained below, Plaintiff respectfully requests that this Court find the Settlement fair, reasonable, and adequate, and grant final approval.

1

## II.    BACKGROUND

### A.    Factual Background of the Allegations

Defendant publishes magazines that are sold to consumers throughout the United States, including to Michigan residents. *See* Amended Complaint, Dkt. No. 7 ¶¶ 2, 11 (hereinafter "Compl."). Plaintiff, a Michigan resident, subscribed to *Boating* magazine, which is published by Defendant. *Id.* at ¶¶ 11, 33–34. In the process of selling her a magazine subscription, Plaintiff alleged Defendant collected Plaintiff's personal information, including her name, address and subscription history. *Id.* at ¶¶ 28–29. Plaintiff further contended Defendant made Plaintiff's information available to third parties without her consent. *Id.* at ¶¶ 25–38.

Plaintiff alleged Defendant's conduct violated the Michigan Video Rental Privacy Act ("VRPA"), M.C.L. § 445.1711, *et seq. See* Compl. ¶¶ 49–57. The VRPA forbids individuals "engaged in the business of selling at retail, renting, or lending books or other written materials" from "disclos[ing] to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer." *See* M.C.L. § 445.1712 (text of statute in effect before July 31, 2016). The VRPA also provides a safe-harbor and allows subscriber information to be disclosed "[i]f the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer" and "[t]he person disclosing the information …

2

informed the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." M.C.L. § 445.1713(d) (text of statute in effect before July 31, 2016). Plaintiff alleged that this safe-harbor does not apply because she did not consent to having her information disclosed, never received adequate notice of disclosure, and Defendant's disclosures were not for the exclusive purpose of marketing goods and services to its customers. *See* Compl. ¶¶ 30–33, 54–55.

### B.    Litigation History, Mediation, and Settlement Negotiations

Plaintiff originally filed this action on July 29, 2016, and later filed an amended complaint on November 07, 2016. *See* Dkt. Nos. 1, 7. Bonnier filed a motion to dismiss on December 9, 2016, which the parties fully briefed. *See* Dkt. Nos. 11, 12, 17, 20. Subsequently, Plaintiff served discovery on Bonnier, the parties began settlement talks, and agreed to mediate the case. Lynch Decl. ¶¶ 3–8.

After a proposed settlement (the "Prior Settlement") was reached at mediation, Plaintiff moved for conditional certification of a settlement class, which the Court granted on December 13, 2017. *See* Dkt. No. 30. However, the Court ultimately denied preliminary approval of the Prior Settlement on July 26, 2018. Dkt. No. 39. The Court held a status conference on October 22, 2018, and issued an amended scheduling order. *See* Dkt. No. 42. Pursuant to that order, the parties continued to conduct discovery and Plaintiff moved to certify a litigation class on

November 26, 2018. Dkt. No. 48; Lynch Decl. ¶ 9. After Plaintiff moved for class certification, the parties agreed to hold a second mediation in January 2019. *See* Lynch Decl. ¶¶ 9–10.

The second mediation was conducted by former Chief Judge Gerald E. Rosen. Lynch Decl. ¶ 10. After a full day of mediation on January 3, 2019, the parties agreed to the terms of a mediator proposal crafted by Judge Rosen. *Id.* at ¶¶ 10–11. The parties memorialized those terms and executed a formal agreement (the "Settlement Agreement" or "SA," attached as Exhibit A to the Lynch Decl.). *Id*. Before finalizing the Settlement Agreement, the Parties engaged in additional discussions related to the terms of the Agreement, and Class Counsel conducted additional discovery to ensure information regarding the class size was accurate. *Id.*

## C.    Report of the Notice and Claims Process

The Parties submitted the proposed settlement to the Court for preliminary approval of the Settlement Agreement and Notice Plan. After a hearing held on June 11, 2019, the Court on June 25, 2019 granted preliminary approval, conditionally certified a settlement class, and authorized dissemination of the notice subject to minor modifications. *See* Dkt. No. 66. On July 10, 2019, the settlement administrator mailed the approved class notice to 164,506 class member addresses. Jeter Decl. ¶ 3. From that mailing, 7,975 notices were returned by USPS to the administrator. *Id.* at ¶ 4. The administrator located forwarding or updated addresses for those class

members, and re-mailed or forwarded 4,347 notices. *Id.* at ¶¶ 4–6. As a result, direct mail notice was successfully delivered to approximately 97.795% of the class. The administrator also established: 1) a dedicated settlement website, which received 93,113 page views from 23,338 visitors; 2) a settlement email address, which received 150 emails; and 3) a toll-free hotline, which received 2,395 minutes of call time and 77 voicemails. *Id.* at ¶¶ 7–11.

The claims deadline was August 23, 2019. As of August 28, 2019, class members have submitted a total of 17,957 claim forms. Jeter Decl. ¶ 13. This represents 10.92% of the total class. The administrator is continuing final review of the claims. Jeter Decl. ¶ 13. Class Counsel anticipates that a small number of class members will correct deficient but timely claim forms, or submit untimely but otherwise valid claim forms between now and the Fairness Hearing. Lynch Decl. ¶ 18. Class Counsel intends to seek the Court's permission to honor all claim forms that are validly completed up to the date of the Fairness Hearing.

## III.   TERMS OF THE SETTLEMENT

### A.   Class Definition

The Settlement Class is defined as "all Michigan residents who subscribed to or received one or more subscriptions to a magazine published by Bonnier between July 28, 2010 and the date of Preliminary Approval of the Agreement, and who did

not purchase such subscriptions through a Third-Party Subscription Agent." (SA ¶ 1.35).

### B.    Relief to the Class

Bonnier agreed to create a Settlement Fund of $2,150,000 (SA ¶ 1.37). This fund shall be used to pay administration expenses, estimated to be about $100,000 (SA ¶ 1.33, Lynch Decl. ¶ 20), an incentive award to Plaintiff of up to $2,500 (SA ¶¶ 1.21, 7.3), and an attorney fees/costs award of up to $623,500, or 29% of the cash fund. (SA ¶ 7.1). The remaining funds will be distributed pro rata among Class Members who submit valid claims. (SA ¶ 2.1.1).

Based on the current number of claims, Class Counsel estimates the cash payment to each claimant will be approximately $76–$79, with the exact amount dependent on the number of untimely and imperfect claims ultimately accepted. *See* Lynch Decl. ¶ 18. This actual claim value falls close to the high end of the range projected by Class Counsel in the preliminary approval motion and class notice, which was between $43 and $86. (*See* Dkt. No. 63-1 (chart of projected *pro rata* claim values)). No cash will revert to Bonnier.

In addition to the Settlement Fund, Bonnier has also agreed to send every Settlement Class Member who did not submit a claim form a voucher or purchase code for a free, one-year subscription to the Bonnier magazine of his or her choice.

(SA ¶¶ 1.20, 2.1.2). Approximately 146,546 Class Members will receive this form of relief from the Settlement despite not filing a claim. Lynch Decl. ¶ 19.

Bonnier also has agreed to retain its disclosure language on all Bonnier publications and undertake commercially reasonable measures to honor any opt-out request made pursuant to the disclosure. (SA ¶ 2.2.1). Bonnier will include the disclosure language in informational materials used for new subscriptions so consumers will receive the disclosure before subscribing to any Bonnier publication and have the ability to timely exercise their rights under the VRPA. (SA ¶ 2.2.2).

### C.    Release

In exchange for the relief described above, Defendant will receive a full release for all claims under the VRPA (or other similar causes of action) that have or could have been brought through June 25, 2019. (SA ¶¶ 1.30, 3.1).

### D.    Notice and Administration Costs

Administration and notice costs shall be paid from the Settlement Fund. (SA ¶ 1.33).

### E.    Incentive Award

Subject to Court approval, Plaintiff will seek an incentive award of up to $2,500 from the Settlement Fund. (SA ¶ 7.3). Defendant will not oppose any request limited to this amount. (*Id*.).

**F.     Attorneys' Fees and Costs**

Defendant agreed the Settlement Fund may be used to pay Class Counsel reasonable attorneys' fees and to reimburse expenses incurred in this case, in an amount to be approved by the Court. (SA ¶ 7.1). Class Counsel is petitioning the Court for $623,500, which represents 29% of the cash Settlement Fund, and Defendant agreed not to oppose any such request within this range. (*Id.*).

**IV.    CERTIFYING THE PROPOSED CLASS FOR SETTLEMENT PURPOSES SATISFIES RULE 23**

In connection with preliminary approval, this Court determined that the Settlement Class satisfied the requirements of Rule 23. For the Court's benefit and to ensure compliance with Rule 23(e), Plaintiff reiterates her arguments here.

Classes certified for settlement purposes, like classes certified through the litigation process, must meet the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-23 (1997). Under Rule 23(a), the settlement class must satisfy numerosity, commonality, typicality and adequacy. *See* Fed. R. Civ. P. 23(a)(1)-(4). Under Rule 23(b)(3), the settlement class must satisfy predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3). The Settlement Class satisfies each of these requirements.

**A.     Numerosity is satisfied**

To satisfy numerosity, the settlement class must be "so numerous that joinder of all members is impracticable." Rule 23(a)(1). "While no strict numerical test

8

exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012).

Here, the Settlement Class easily satisfies numerosity because, according to Defendant's records, there were 164,509 persons who subscribed to or received at least one Bonnier publication at a Michigan address between July 28, 2010 and the date of preliminary approval. This number of plaintiffs could not be practically joined in one action without Rule 23 class certification.

### B.     Commonality is satisfied

To satisfy commonality, there must be "questions of law or fact common to the [settlement] class." Rule 23(a)(2). "[A] common question is one where 'the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Only a "single common question" is required. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

Here, commonality is satisfied because the essential questions of law and fact at issue in this case are common to Plaintiff and the Class. The Court previously found this factor was satisfied because "the claims of the absent class members will be identical." Dkt. No. 66, at 6. The common legal questions include whether Defendant is "engaged in the business of selling at retail … books or other written materials," and whether Defendant disclosed "a record of information concerning

the [Class Members'] purchase[s]" that "identifies the identity of the [Class Members]." *Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 533 (E.D. Mich. 2015). The common factual questions include whether Defendant, as a matter of policy, disclosed the personal subscriber information of Plaintiff and the Class Members. *Id.*

To be sure, several defenses Bonnier has asserted also raise common issues. For example, the VRPA provides a safe-harbor from liability if Bonnier's disclosures were made for the exclusive purpose of marketing goods and services directly to consumers, and it provided written notice to the subscriber with an opportunity to opt-out. *See* M.C.L. § 445.1713(d) (text of statute in effect before July 31, 2016). Thus, whether Bonnier's disclosures were made for exclusive marketing purposes, and if so, whether it gave Class Members sufficient notice and a chance to opt out are common to Plaintiff and the Class. *Coulter-Owens*, 308 F.R.D. at 533. For these reasons, commonality is satisfied.

### C.    Typicality is satisfied

To satisfy typicality, "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Rule 23(a)(3). "[T]he representative's interests [must] be aligned with those of the represented group, and in pursing h[er] own claims, the named plaintiff [must] also advance the interests of the class members." *Young*, 693 F.3d at 542.

Typicality is satisfied here because Plaintiff has alleged that Bonnier discloses the personal subscriber information of all its subscribers as a matter of policy. Because Bonnier disclosed Class Members' information in the same way as Plaintiff's, the pursuit of Plaintiff's claims will necessarily advance the interests of the Class Members. Similarly, and as explained in the commonality section above, Plaintiff has alleged Bonnier's unauthorized disclosures were not made for the exclusive purpose of marketing goods and services directly to Plaintiff, and that notice was insufficient. Plaintiff's position on these issues is directly aligned with the interests of the Class. As a result, typicality is satisfied. *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 534-35. To be sure, the Court previously found this factor was satisfied because Plaintiff's claims are identical to those of the Class. *See* Dkt. No. 66, at 7.

### D.    Adequacy is satisfied

To satisfy adequacy, "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two criteria are relevant to this inquiry: "(1) the representative must have common interests with unnamed members of the class; and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543. Courts also must "review[] the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Id.*

11

Here, Plaintiff and each Class Member are Michigan residents who subscribed to Bonnier publications, and each had their personal subscriber information disclosed without their consent. Plaintiff and each Class Member have identical interests in recovering for these unlawful disclosures and ensuring that similar disclosures do not continue. Accordingly, Plaintiff's interests are not antagonistic to the Class, and she can adequately represent their interests while seeking redress for herself.

Plaintiff has also demonstrated her willingness to devote time and energy to this action by working with counsel in investigating the claims and developing the complaint, conferring with counsel before, during, and after settlement negotiations, and preparing for and appearing at a deposition on November 19, 2018.

Plaintiff's Counsel have a wealth of experience litigating consumer class actions. Lynch Dec. ¶¶ 29–30; *see also* Dkt. Nos. 25-1, 25-2 (firm resumes). In this case, Plaintiff's Counsel has devoted substantial time and effort towards obtaining a strong outcome for the class, including taking two Rule 30(b)(6) depositions of Defendant, serving document requests and reviewing documents produced, and serving third party subpoenas and reviewing information provided by those third parties, and closely examining settlements reached in similar matters. Lynch Decl. ¶¶ 12–13, 16; *see generally* Pls.' Mot. for Award of Attorneys' Fees & Mem in Supp.

12

For these reasons, Plaintiff and her Counsel have demonstrated their commitment to advocating for the interests of each Class Member. As a result, adequacy is satisfied.

### E.    Predominance is satisfied

To satisfy predominance, "the questions of law or fact common to the [settlement] class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc.*, 136 S. Ct. at 1045.

Because the central questions of law and fact identified above are susceptible to generalized class-wide proof, and because Defendant has engaged in a common course of conduct with respect to the Class as a whole, predominance is satisfied. *See, e.g.*, *Coutler-Owens*, 308 F.R.D. at 536. This accords with the Court's previous finding that predominance was satisfied. Dkt. No. 66, at 9.

### F.    Superiority is satisfied

To satisfy superiority, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Use of the class method is warranted [where] … class members are not likely to file individual actions [and] the cost of litigation … dwarf[s] any potential

13

recovery." *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 861 (6th Cir. 2013). "Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Young*, 693 F.3d at 545. Moreover, where few class members are likely to be aware of the allegedly harmful conduct, class litigation is warranted. *Id.* ("Given the unlikelihood that many [class members] will discover, let alone attempt to vindicate, their injury … the district court did not abuse its discretion in finding that class litigation was a superior method of adjudicating [the p]laintiffs' claims.").

Here, like in *Young*, Plaintiff has alleged a single course of conduct by Bonnier that has impacted Class Members in the exact same manner. Furthermore, prior to receiving the Notice, most Class Members likely did not realize they had a claim, and almost certainly would find the cost of individual litigation much too high to justify seeking redress. For all of these reasons, the class action mechanism is superior to any available alternative. *Accord* Dkt. No. 30, at 4.

## V.     THE SETTLEMENT WARRANTS FINAL APPROVAL

Review and approval of class settlements involves a two-step process: (1) preliminary approval of the proposed settlement and the proposed class and the method and form of class notice; and (2) final approval of the settlement following notice and hearing to determine fairness. *Franke v. Fin. Lead Servs.*, No. 12-cv-1374, 2014 WL 7010790, at *3 (W.D. Mich. Dec. 10, 2014) (citing Manual for

Complex Litig. § 30.41, at 236-37 (3rd ed. 1995); Manual for Complex Litig., § 21.632, at 320 (4th ed. 2004) (similar).

This Court previously granted preliminary approval and now must decide whether to grant final approval. At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). The substantive requirements relevant for final approval in the Sixth Circuit include:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). In considering these factors, "it is neither required nor is it possible for a district court to determine that the proposed settlement is the fairest possible resolution of the claims of every individual class member; rather, the court need only determine whether the settlement taken as a whole, is fair, adequate and reasonable." *Simpson v. Citizens Bank*, 2013 WL 12122431, at *4 (E.D. Mich. Sept. 5, 2013). For the reasons explained below, an examination of the final fairness factors demonstrates the proposed settlement should be given final approval.

### A.    The risk of fraud or collusion

Courts "find an absence of collusion when settlement negotiations are conducted by a third-party mediator." Newberg on Class Actions § 13.14 (5th ed.

2017). The current Settlement was reached with the direct supervision and input of former Chief Judge Gerald E. Rosen, who served as the second mediator for the parties after the Prior Settlement was not approved. Lynch Decl. ¶¶ 10–11. The framework of the Settlement was established by Judge Rosen's mediator's proposal, which the parties accepted after a full day of mediation on January 3, 2019. *Id.* With Judge Rosen's continued participation, the parties then made a few minor adjustments to the Settlement as information about the size of the class was confirmed through post-mediation discovery. *Id.* The parties were also guided during their second mediation process by this Court's comments with respect to shortcomings in the Prior Settlement. This level of neutral, third-party involvement ensured that there was no risk of fraud or collusion in the negotiation process.

## B. The complexity, expense and likely duration of the litigation

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphia Corp. Securities, Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008). Generally speaking, "most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). "For class actions in particular, courts view

settlement favorably because it avoids the costs, delays and multitudes of other problems associated with them." *In re Delphia Corp.*, 248 F.R.D. at 497.

Had the parties not reached the proposed settlement, the Court would have had to rule on Defendant's anticipated renewed motion to dismiss, and the parties would have had to engage in contested motions for summary judgment and class certification. This complex process would be costly and time-consuming and would create risks that the Settlement Class would not be certified or would recover nothing. Defendant assuredly would have continued contesting the merits of this case vigorously and opposed certification of any class. Furthermore, even if a class was certified, and liability was established, Defendant would most likely appeal any adverse judgment and, in light of the possibility of potentially ruinous statutory damages on a class-wide basis, would attempt to argue for a reduction in damages based on due process and other grounds. The Settlement Agreement avoids this complexity, expense, and time and affords the Settlement Class Members prompt resolution of their claims. This resolution is accomplished years earlier and at a much lower cost than any resolution achieved through protracted litigation. As a result, this factor weights in favor of final approval.

## C.   The amount of discovery engaged in by the parties

Despite the incorrect accusations of the lone objector, the parties did engage in a significant amount of discovery, which provided Class Counsel with sufficient

information to both negotiate this Settlement and ensure that it represents a fair compromise of the class's claims in light of the potential risks and rewards were litigation to continue. Plaintiff took two Rule 30(b)(6) depositions of Defendant, served document requests, and received both formal and informal responses and document productions from Bonnier. Lynch Decl. ¶¶ 11–13. Bonnier took Plaintiff's deposition on November 19, 2018, and served document requests on her. *Id.* at ¶ 9. After the proposed settlement was reached, Class Counsel conducted further discovery, including serving three third party subpoenas and receiving additional information and documents from Bonnier and the third parties, to ensure that Defendant's information regarding the size of the Settlement Class was accurate. *Id.* at ¶¶ 11–13.

Although the objector insinuates that this third-party discovery was inconsequential or "immaterial" (Obj. at 6–7, 13), the objector is wrong; in truth this information went to the very heart of the claims at issue. The three third parties subpoenaed by Class Counsel were the entities most directly involved in Bonnier's "list rental" practices during the class period. Lynch Decl. ¶ 13. After taking a Rule 30(b)(6) deposition of Bonnier and subpoenaing the three outside companies, Class Counsel confirmed its full understanding of how Bonnier's subscriber data was sold and that the class size information was valid. *Id*. This permitted Class Counsel to assess the fairness of the Settlement and negotiate for proper adjustments.

As the parties have exchanged sufficient information to apprise themselves and the Court of the propriety of the terms of the Settlement Agreement, this factor weighs in favor of final approval.

### D.  The likelihood of success on the merits

Courts "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 925 F.3d 299, 309 (6th Cir. 2016). To this end, courts must "specifically examine what the unnamed class members would give up in the proposed settlement, and then explain why—given their likelihood of success on the merits—the tradeoff embodied in the settlement is fair to unnamed members of the class." *Id.*

While Plaintiff is confident in her claims, she acknowledges that the likelihood of success on the merits faces obstacles. Specifically, even though Settlement Class Members did not purchase their subscriptions through third-party subscription agents, they also did not purchase their magazines directly from Defendant.  Defendant instead used a third-party "fulfillment company" to directly interface with the Settlement Class Members. That third party handled subscriber orders, managed subscriber files, accepted payments, and dealt directly with subscriber complaints. Lynch Decl. ¶ 15. Those facts could potentially take

Defendant outside of the reach of the VRPA, which requires that defendants sell their publications "at retail."  *See* M.C.L. § 445.1712 (text of statute in effect before July 31, 2016); *Coulter-Owens v. Time, Inc.*, 695 F. App'x 117, 121–24 (6th Cir. 2017) (affirming dismissal where the defendant's magazines not sold "at retail").

Defendant also placed opt-out notices on its magazine publications, which provided contact information for its customers to opt-out of any disclosure of their personal information. Lynch Decl. ¶ 15. If that notice were deemed sufficient, Defendant would fall within the VRPA opt-out safe-harbor. *See* M.C.L. § 445.1713(d) (text of statute in effect before July 31, 2016).  And even if Plaintiff were to prevail on those issues, and secure aggregate classwide relief, Defendant is likely to appeal any adverse judgment.  And in light of the amount of statutory damages potentially available to the Settlement Class, Defendant will undoubtedly argue for a reduction of damages on due process grounds.  *See, e.g.*, *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) ("[T]he potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues.").

When viewed against this backdrop of uncertainty at summary judgment, trial, and any appeal, the classwide relief provided by the Settlement Agreement is fair, adequate, and reasonable.  Each Settlement Class Member who submits a valid claim form will be entitled to a pro-rata share of the Settlement Fund, now estimated at

between $76–79 after fees and administrative costs. Additionally, each settlement Class Member who did not submit a claim form will nevertheless receive relief in the form of a voucher or purchase code for a free, one-year subscription to the Bonnier magazine of his or her choice.  And Defendant has agreed to ensure all customers going forward will receive notice of their right to opt-out of any marketing disclosures before they subscribe to Defendant's publications, so consumers can make an informed decision about their rights under the VRPA.  SA ¶¶ 2.2.1, 2.2.2.

The projected claim value of at least $76 in this case—plus a free one-year subscription to all of the 146,546 non-claimants—compares very favorably to other VRPA settlements that have been granted final approval in this district, none of which provided any relief at all to non-claimants. *See, e.g.*, *Moeller v. American Media, Inc.*, 5:16-cv-11367, Dkt. No. 42 (E.D. Mich. Sept. 28, 2017) (approximate claim value of $100, but no relief at all for nearly 300,000 non-claimants); *Halaburda v. Bauer Publishing Co., LP*, No. 12-cv-12831, Dkt. No. 68 (E.D. Mich. January 8, 2015) (approximate claim value of $74, but no relief at all for 30,000 non-claimants); *Coulter-Owens v. Rodale, Inc.*, No. 14-cv-12688, Doc. 54 (E.D. Mich. Sept. 29, 2016) (approximate claim value of $44, but no relief at all for 557,000 non-claimants); *Kinder v. Meredith Corporation*, No. 14-cv-11284, Dkt. No. 81 (E.D. Mich. May 18, 2016) (approximate claim value of $50, but no relief at all for 868,000 non-claimants).

### E. The opinions of class counsel and class representative

"The judgment of the parties' counsel that the settlement is in the best interest of the settling parties is entitled to significant weight, and supports the fairness of the class settlement." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 597 (E.D. Mich. 2006). Here, proposed Class Counsel and Defendant's counsel are reputable and experienced in complex class action litigation and have adequately assessed the strengths of their claims and positions. This factor weighs in favor of final approval.

### F. The reaction of absent class members

This factor weighs in favor of approval where the majority of class members have elected to remain in the settlement class without objecting. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003). The deadline for objecting or opting out has passed, and the overwhelming majority of class members have elected to stay in the class and not object. As of August 28, 2019, 17,957 class members elected the cash relief and filed claims, approximately 10.92% of the total class. Jeter Decl. ¶ 13. Only three class members requested exclusion from the settlement class, and only one class member filed an objection. Lynch Dec. ¶ 20. The objector is the same individual who unsuccessfully attempted to intervene.

Plaintiff will file a separate, full response to the objection, but it is without merit and appears to have been filed by objector's counsel in a bad faith effort to extort a fee payment from Class Counsel. To summarize, the objector complains

only about the sequence of the objection deadline and Class Counsel's fee application, and Class Counsel's alleged failure to conduct discovery. As to the first issue, in contrast to the Ninth and Seventh Circuit cases identified by the objector, the Second and Eighth Circuits have found that the fact that class counsel's fee application is filed after the objection deadline is not necessarily grounds for denying approval of a settlement or fee request. *See Keil v. Lopez*, 862 F.3d 685, 703–06 (8th Cir. 2017); *Cassese v. Williams*, 503 F. App'x 55, 57–58 (2d Cir. 2012); *see also Bower v. MetLife, Inc.*, No. 1:09-cv-351, 2012 WL 12991199 at *5 (S.D. Ohio, Oct. 17, 2012) ("[A]ny alleged error committed by filing the fee petition after the objection deadline would still be harmless because the objectors had a fair opportunity to prepare objections to the fee petition after it was filed and before the Fairness Hearing."). The Sixth Circuit has not directly ruled on this question. As to the second part of the objection, Class Counsel conducted significant formal and informal discovery, and objector is simply wrong about the facts. Lynch Decl. ¶¶ 9–13 (describing discovery taken).

There is, however, significant evidence that the objection was filed in bad faith due to objector's counsel's desire to obtain fees from the settlement. Prior to filing the objection, objector's counsel repeatedly requested that Class Counsel agree to pay at least $30,000 to prevent the filing of the objection, $28,750 of which was to go directly to objector's counsel. Lynch Decl. ¶¶ 21–27. At no point did the

objector or his counsel request any specific modification to the settlement or specific information about the forthcoming fee request, nor did objector's counsel request information from Class Counsel regarding the time or expenses incurred during the litigation or the types or amount of discovery taken. *Id.* at ¶ 28. In fact, objector's counsel did not divulge the basis of the threatened objection until August 22, 2019, despite initially sending Class Counsel a "proposed settlement" of the objection as early as July 2, 2019, one week after this Court granted preliminary approval (and before the Class Notice had even been mailed). *Id.* at ¶¶ 21–25, 28. In reality, this "proposed settlement" of the objection was nothing more than a naked attempt to obtain $30,000 for the objector and his counsel, which is evident because the "proposed settlement" offered by the objector's counsel did not require or even suggest a single modification to the proposed class Settlement pending before the Court. *Id.* at ¶ 22. For these reasons and those described in Plaintiff's separate forthcoming response, the objection should be overruled.

Given the class's overall, extremely favorable reaction, this factor weighs in favor of final approval.

## G. The public interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem*, 218

F.R.D. at 532. Here, settlement will prevent prolonged litigation and conserve judicial resources, both at the district and appellate court levels. Settlement also will further the aims of the VRPA by ensuring Defendant's customers are apprised and given notice of their rights to opt-out of any marketing disclosures prior to becoming a subscriber to any of Defendant's magazines. This factor favors final approval.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order 1) overruling/denying the objection, and 2) granting final approval to the Settlement Agreement and awarding such other relief as the Court deems just.

Dated: September 3, 2019

*/s/ Gary F. Lynch*
Gary F. Lynch
Jamisen A. Etzel
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15224
Phone: (412) 322-9243
Fax: (412) 231-0246
glynch@carlsonlynch.com
jetzel@carlsonlynch.com

Daniel Myers
**THE LAW OFFICES OF DANIEL O. MYERS**
4020 Copper View Ste. 225
Traverse City, MI 49684
Phone: (231) 943-1135
Fax: (231) 368-6265
dmyers@domlawoffice.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Tuesday, September 3, 2019, I electronically filed the foregoing document with the Clerk of Court using the Court's ECF filing system, which will send notification to all counsel of record.

*/s/ Gary F. Lynch*

Gary F. Lynch
