UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA FRISKE,

        Plaintiff,                                  Case Number 16-12799

v.                                                        Honorable David M. Lawson

BONNIER CORPORATION,

        Defendant.

_____/

### ORDER GRANTING JOINT MOTION FOR FINAL
### APPROVAL OF CLASS SETTLEMENT AND DISMISSING CASE

The Court conducted a fairness hearing on September 23, 2019 to determine whether a settlement agreement should be given final approval on behalf of the certified settlement class in this case. The Federal Rules of Civil Procedure require court approval of settlements in class actions, Fed. R. Civ. P. 23(e)(2), and if the settlement would determine the rights of and bind absent class members, "the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." *Ibid*. The September 23 hearing was the second step in the settlement approval process. *See* Manual for Complex Litigation § 23.632-.633 (4th ed.); *see also Tennessee Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565 (6th Cir. 2001). On June 25, 2019, the Court granted preliminary approval of the settlement agreement under Federal Rule of Civil Procedure 23(e) as the first step in the process. The Court directed that written notice to the class be given by July 10, 2019 via first-class mail augmented by other media. Plaintiff's counsel retained Angeion Group as the agent of the named plaintiff and class counsel to give notice in the manner approved by the Court, and ultimately to administer the settlement, process claims, and make distributions. The Court approved the retention of Angeion Group as the settlement administrator.

I.

The named plaintiff, Rebecca Friske, brought this action under Michigan's Video Rental Privacy Act (VRPA), Mich. Comp. Laws § 445.1711 *et seq.*, alleging that defendant Bonnier Corporation, a Delaware corporation that sells subscriptions to magazines nationwide, sold and disclosed customer data to third parties in violation of Michigan law. She sought damages and injunctive relief to prevent further disclosure of her and other similarly situated class members' personal information.

The Court previously conditionally certified the following class in an order granting the plaintiff's second class certification motion:

> All Michigan residents who subscribed to or received one or more subscriptions to a magazine published by Bonnier between July 28, 2010 and the date of Preliminary Approval of the Agreement, and who did not purchase such subscriptions through a Third-Party Subscription Agent.

Order Granting Prelim. Approval of Class Settlement (ECF No. 66, PageID.793). The Court also granted preliminary approval of the revised settlement.

II.

Under the proposed settlement, the defendant agreed to pay $2,150,000 into a common, non-reversionary fund for the payment of claims, attorney fees, and expenses. Absent class members who submit claims will share in the fund on a *pro rata* basis after the payment of fees and expenses. The defendant also agreed to retain the disclosure language contained in all its publications, undertake commercially reasonable measures to honor the customer requests to opt out of the subscriber list made available to third parties, and include disclosure language in informational materials used to establish a new magazine subscription so that disclosure is made to consumers before subscribing. Finally, for absent class members who do not submit a claim

form, the defendant will send every settlement class member a voucher or purchase code for a free, year-long magazine subscription.

The agreement calls for payments from the fund to be allocated as follows: first, to cover the costs for the settlement fund administrator and any other administrative expenses associated with the settlement; second, to pay out attorneys' fees and costs according to hours and reasonable hourly rates approved by the Court; third, to pay $2,500 as an incentive award to the named plaintiff; and finally to pay each class member who submitted a timely claim for a *pro rata* share of the balance of the fund, estimated to be between $76 to $79, depending on the number of untimely or imperfect claims accepted. Those payments are projected to fully exhaust the settlement common fund.

### III.

Under the schedule set by the Court, the period for filing claims, objections, and opt-out notices ran from July 10, 2019 to August 23, 2019. The settlement administrator notified 97.795% of the 164,509 class members by first-class mail. The settlement administrator also established: 1) a website for the settlement, which received 93,113 page views from 23,338 visitors; 2) settlement email address, which received 150 emails; and 3) a toll-free hotline, which received 2,395 minutes of call time and 77 voicemails. By August 28, 2019, class members submitted 17,957 claim forms, representing 10.92% of the entire class. Three class members excluded themselves and one class member objected to the settlement. The objector, William LeTarte, asserted that (1) class counsel failed to file their motion for attorneys' fees and costs before the objection deadline, violating Federal Rule of Civil Procedure 23(h) and due process; and (2) that discovery about the defendant's relationships with insurers, third-party data aggregators, data appenders, or data cooperatives was necessary but lacking.

IV.

Federal Rule of Civil Procedure 23(e) imposes certain "rules for the settlement, dismissal, or compromise of class claims." *Whitlock v. FSL Management, LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016). "It requires that class-action claims 'may be settled, voluntarily dismissed, or compromised only with the court's approval.'" *Ibid.* (quoting Fed. R. Civ. P. 23(e)). "Approval is only warranted where the court determines, inter alia, that the proposed class settlement would be 'fair, reasonable, and adequate.'" *Ibid*.

The Court denied the plaintiff's first motion for preliminary approval of the class settlement, emphasizing that the proposed cash distribution of $16 or a free magazine subscription was not fair, adequate, or reasonable. The Court cited other cases in which VPRA claims were settled on a class-wide basis, noting that the relief awarded was substantially more than the proposal then submitted. The plaintiff now estimates the cash payment to each class member will range between $76 to $79, and class members that did not file a claim will receive a free one-year subscription to one of the defendant's magazines.

The plaintiff has established that the current proposed settlement is adequate, reasonable, and fair to the class. "Factors that guide [the assessment by the Court of a proposed class settlement] include: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Whitlock*, 843 F.3d at 1093 (quoting *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007)). These factors are incorporated in Rule 23(e)'s approval requirements. *See* Fed. R. Civ. P. 23(e)(2)(A)-(D).

*First*, the risk of fraud and collusion is low, and the settlement was reached at arm's length. The settlement was reached under the supervision of a professional mediator, who served as the second mediator for the parties after the Court rejected the earlier settlement proposal. The mediator's mediation proposal set the framework for the settlement, which the parties accepted after mediation in January 2019. The parties made some minor adjustments in light of the Court's critiques of the past settlement and with the mediator's participation after the size of the class was confirmed through post-mediation discovery. This level of third-party involvement minimized the risk of fraud or collusion in the negotiation process.

*Second*, the litigation is somewhat complex, and it has endured for nearly three years. Absent settlement, the expenses would multiply, the plaintiff would have to defend against the defendant's anticipated renewed motion to dismiss, and the parties would likely engage in contested motions for summary judgment and class certification. This process would be costly and time-consuming and could create a risk that the settlement class would recover nothing. Even if the plaintiff obtained class certification and prevailed on the merits, the defendant likely would appeal and seek a reduction in damages.

*Third*, the parties have engaged in extensive formal discovery throughout the pendency of this litigation to explore the basis of the plaintiff's claims and the potential defenses. Depositions of the named plaintiff and defendant Bonnier's corporate representative were completed, and the parties exchanged formal and informal documents and responses. After the first proposed settlement was rejected, class counsel took two depositions under rule 30(b)(6) of the defendant's representatives, focused mainly on the manner in which customer data lists were compiled and made available to third parties. Class counsel conducted further discovery, including serving three third-party subpoenas and receiving additional information from the defendant and third parties to

ensure that the class size was accurate and to determine how the list marketing rental company processed and disseminated the customer data. Subpoenas were issued to Palm Coast Data, the first fulfillment company; CDS Global, the second fulfillment company; and Lake Group Media, the list marketing rental company. The parties received responses to those subpoenas, which informed them about the merits of Bonnier Corporation's potential "retail" defense and the applicability of the safe-harbor and other exceptions under the VPRA.

Objector LeTarte argues that the plaintiff failed to conduct sufficient discovery about the defendant's relationships with insurers, third-party data aggregators, "data apenders", or data cooperatives. The record, however, does not support that objection. Although the plaintiff took no deposition of an insurer, that information was available through written discovery. And the through the issuance of third-party subpoenas and the Rule 30(b)(6) depositions, the parties fully explored the defendant's relationship with the entities that disseminated customer data. Moreover, LeTarte failed to make a "clear and specific showing" how this material was "vital" to the settlement. *See Geier v. Alexander*, 801 F.2d 799, 809 (6th Cir. 1986). The parties exchanged sufficient information to apprise themselves and the Court of the propriety of the settlement proposal, determine the viability of the claims and defenses, and assess the costs, risks, and delay of trial and appeal.

*Fourth*, the plaintiff's prospects for success on the merits appear good, but not certain. The biggest obstacle for the plaintiff is that most class members subscribed through third-party agents and did not purchase their magazines directly from Bonnier. Instead, Bonnier used a third party "fulfillment company" that handled subscription orders, managed subscriber files, accepted payments, and dealt with customer complaints. Because the VPRA requires that defendants sell their publications "at retail" to apply, the defendant may be outside the statute's reach. *See* Mich.

- 6 - 

ensure that the class size was accurate and to determine how the list marketing rental company processed and disseminated the customer data. Subpoenas were issued to Palm Coast Data, the first fulfillment company; CDS Global, the second fulfillment company; and Lake Group Media, the list marketing rental company. The parties received responses to those subpoenas, which informed them about the merits of Bonnier Corporation's potential "retail" defense and the applicability of the safe-harbor and other exceptions under the VPRA.

Objector LeTarte argues that the plaintiff failed to conduct sufficient discovery about the defendant's relationships with insurers, third-party data aggregators, "data apenders", or data cooperatives. The record, however, does not support that objection. Although the plaintiff took no deposition of an insurer, that information was available through written discovery. And the through the issuance of third-party subpoenas and the Rule 30(b)(6) depositions, the parties fully explored the defendant's relationship with the entities that disseminated customer data. Moreover, LeTarte failed to make a "clear and specific showing" how this material was "vital" to the settlement. *See Geier v. Alexander*, 801 F.2d 799, 809 (6th Cir. 1986). The parties exchanged sufficient information to apprise themselves and the Court of the propriety of the settlement proposal, determine the viability of the claims and defenses, and assess the costs, risks, and delay of trial and appeal.

*Fourth*, the plaintiff's prospects for success on the merits appear good, but not certain. The biggest obstacle for the plaintiff is that most class members subscribed through third-party agents and did not purchase their magazines directly from Bonnier. Instead, Bonnier used a third party "fulfillment company" that handled subscription orders, managed subscriber files, accepted payments, and dealt with customer complaints. Because the VPRA requires that defendants sell their publications "at retail" to apply, the defendant may be outside the statute's reach. *See* Mich.

Comp. Laws § 445.1712 (text of statute in effect before July 21, 2016); *Coulter-Owens v. Time, Inc.*, 695 F. App'x 117, 121-24 (6th Cir. 2017) (dismissing case where defendant did not sell magazines "at retail"). The defendant also placed opt-out notices on its publications, which provided contact information for its customers to opt out of any personal information disclosures. If the Court finds that notice sufficient, Bonnier may be shielded by the opt-out safe-harbor. *See* Mich. Comp. Laws § 445.17813(d).

*Fifth*, class counsel and the named plaintiff who actively participated in the litigation and the mediation expressed their strong endorsements of the settlement.

*Sixth*, the absent class members who received notice and who have responded in any way nearly unanimously favor the settlement. More than 17,000 absent class members filed claim forms indicating their willingness to participate in the settlement and only three out of the more than 160,000 identified class members elected to opt out. One class member — William LeTarte — filed an objection, but it does undermine the finding that the settlement is fair and or adequate.

Mr. LeTarte's objection is twofold: he contends that the plaintiff did not engage in certain discovery that LeTarte deemed important; and he argues that the plaintiff (and the Court) violated Rule 23(h) and due process by making it impossible to object to the request for attorneys' fees. The first objection was discussed above. The Court was satisfied that plaintiff's counsel was fully informed about the strengths and weaknesses of the case and the opportunities for settlement based on the discovery taken both before and after the first settlement was rejected by the Court.

The second objection misapprehends the Court's order preliminarily approving the settlement and the deadlines imposed in that order. LeTarte believes, correctly, that August 26, 2019 was the deadline for absent class members to object to the settlement, and September 3, 2019 was the deadline to move for final settlement approval and for attorney's fees. He also assumes,

incorrectly, that when the plaintiff moved for approval of their requested attorney's fees on September 3, he was procedurally barred from objecting to that fee motion based on the deadline for objecting to the settlement itself. The order stated: "The notice to class members must explain that objections to, and requests to be excluded from, the class settlement must be filed with the Court and the parties' counsel **on or before August 26, 2019**." ECF No. 66, PageID.794. No deadline was imposed in that order for responding to a fee motion.

Rule 23(h), which governs the award of attorney's fees and certain costs in class actions, states that class counsel seeking attorney's fees must follow the procedure set out in Rule 54(d)(2) (requiring the motion to be filed "no later than 14 days after entry of judgment," Fed. R. Civ. P. 54(d)(2)(A)). The 14-day deadline may be modified, as the fee motion is "subject to the provisions of this subdivision (h) at a time the court sets." Fed. R. Civ. P. 23(h)(1). The Rule explicitly states that "[a] class member . . . may object to the motion." Fed. R. Civ. P. 23(h)(2). In *In Re Mercury Interactive Corporation Securities Litigation*, on which LeTarte primarily relies, the court held that the district court violated Rule 23(h) when it issued a scheduling order that set the deadline for objecting to the fee motion *before* the date that the motion had to be filed. 618 F. 3d 988, 990-91, 994 (9th Cir. 2010) (observing that "the class members were informed that they could object to the settlement or application for attorneys' fees by 'appear[ing] . . . at the Settlement Fairness Hearing' if they 'submit [ted] a written notice of objection, received or postmarked on or before September 4, 2008,'" and finding that "although notice of the motion was provided to the class, class members were deprived of an adequate opportunity to object to the motion itself because, by the time they were served with the motion, the time within which they were required to file their objections had already expired").

*Mercury Interactive Corporation* does not help LeTarte here, because the Court set no deadline for responding, by objection or otherwise, to the attorney's fee motion. Rather, the filing deadline for that motion was established by local rule at 14 days after the motion was filed and served. *See* E.D. Mich. LR 7.1(e)(2)(B). LeTarte did not file an answer or objection to that motion within the time allowed, nor did he oppose the motion for final settlement approval or appear at the hearing. The procedure employed here did not suffer from the same defect that the Ninth Circuit detected in *Mercury Interactive Corporation* or the other cases that criticize the practice of setting deadlines for objecting to fee motions that predate the motion filing deadline itself, because the deadline for opposing the fee motion *postdated* the motion filing deadline. In *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014), for example, the court criticized the procedure used by the magistrate judge to approve a class settlement, including attorney's fees, noting that "[c]lass counsel did not file the attorneys' fee motion until after the deadline set by the court for objections to the settlement had expired." *Id.* at 637. The court cited *Mercury Interactive Corporation* and the Committee notes on the 2003 Amendments to Rule 23. That note states that "the court should provide sufficient time after the full fee motion is filed to enable potential objectors to examine the motion." Fed. R. Civ. P. 23(h)(2) advisory committee note (2003). The 14 days allowed by LR 7.1(e)(2)(B) was sufficient to allow LeTarte to respond to the fee motion, had his attorney been the least bit attentive. *See Cassese v. Williams*, 503 F. App'x 55, 58 (2d Cir. 2012) (holding that even where the district court set the deadline to file "objections to the settlement, including to class counsel's request for attorney's fees and expenses, to be due before the fee motion," no violation of Rule 23(h) occurred because the fairness hearing was scheduled 14 days after the objection deadline, and "[a]ny objectors then had two weeks to crystallize their objections and request further information before attending the fairness hearing").

Even where a violation of Rule 23(h)(2) occurs, courts have found no unfairness (and have affirmed approval of the settlement *and* attorney's fee award) where potential objectors otherwise have had the opportunity to address the merits of a fee request. *See Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1193 (11th Cir. 2019) (finding no prejudice to the objectors, despite an objection deadline that predated the filing date of the attorney's fee motion, where after the deadline two objectors "made detailed arguments in opposition to the requested attorney's fee and incentive awards, including by filing opposition briefs after [the named plaintiff] filed the attorney's fee motion); *Keil v. Lopez*, 862 F.3d 685, 705 (8th Cir. 2017) (holding that the Rule 23(h)(2) error was "harmless because there [was] no reasonable probability that it affected the outcome of the proceeding," where "the four objectors now have had an ample opportunity on appeal to respond to the specific arguments contained within class counsel's fee motion. Despite raising a number of objections, none of their arguments are meritorious.").

Despite ample opportunity to do so, LeTarte has not filed any response in opposition to the attorney's fee motion. The attorney's fees in this case will be awarded from a common fund, and therefore the amount of the fee could impact the fairness of the settlement. Nonetheless, this factor (the reaction of absent class members) does not cut against approval. That is especially so where the objection appears to be made in bad faith. LeTarte has not objected to the settlement's substance at all; his objections focus on the sequence of the objection deadline and the parties' alleged failure to conduct discovery. And LeTarte's lawyer's conduct leading up to the final settlement approval casts doubt on his *bona fides*. Before tendering the objections to the Court, LeTarte's lawyer repeatedly asked class counsel to pay at least $30,000 to forestall filing the objection, $28,750 of which would go to LeTarte's lawyer. LeTarte, through counsel, never requested any specific modifications to the settlement agreement, never requested any information

about the forthcoming fee request, and never requested information about the time or expenses incurred throughout litigation. In fact, LeTarte did not explain the basis of his threatened objection until August 22, 2019, despite sending class counsel a proposed $30,000 settlement agreement one week after the Court granted preliminary approval on June 25, 2019 and before the class notice was mailed. The objection appears to be nothing more than an extortion attempt dressed up in procedural nomenclature.

*Seventh*, the public interest favors resolution of the matter by way of a settlement that will secure a substantial recovery for the class members while avoiding the waste of considerable time and effort by the parties and the Court, likely to reach more or less the same end. The settlement treats class members equitably relative to each other, providing a significant cash recovery to those class members who submit a claim, and even providing some compensatory relief to those who do not.

V.

The named plaintiff spent considerable time with class counsel investigating the claims, assisted with drafting and reviewing her complaint, sat for a deposition, and actively participated in the litigation and settlement process. The Court is satisfied that the requested incentive payment of $2,500 for the named plaintiff is "not in fact a bounty," *see Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 311 (6th Cir. 2016), but instead represents just compensation for the time and effort spent on bringing this action to a successful conclusion. This incentive award may be paid as an expense of administration.

VI.

As noted in the order preliminarily approving the settlement and conditionally certifying the settlement class, "[a]ny class certification must satisfy Rule 23(a)'s requirement of numerosity,

- 11 -

commonality, typicality, and adequate representation." *Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 278 (6th Cir. 2018). "Further, a class action must fit under at least one of the categories identified in Rule 23(b)." *Ibid.* "The district court must conduct 'a rigorous analysis' as to all the requirements of Rule 23." *Id.* at 278-79 (quoting *Pipefitters Local 636 Insurance Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011)).

That "rigorous analysis" was performed when the Court conditionally certified the settlement class. The evidence presented by the parties in their motion for final settlement approval fortifies the previous findings. *First*, the conditionally certified class comprising approximately 164,509 Michigan residents who subscribed to or received one or more subscriptions to a magazine published by Bonnier during the class period certainly meets the requirement of being so numerous that joinder of all those persons as individual plaintiffs would be impracticable.

*Second*, there are predominant common questions of law and fact affecting all of the class members that are pertinent to the defendant's liability. The claims of the absent class members are identical: that the defendant unlawfully disclosed personal subscriber information in violation of Michigan law. According to the plaintiff, there is little room for individualized factual analysis, since the defendant's conduct takes the claims away from the statute's safe harbor provisions. The defendant takes no issue with that proposition.

*Third*, because the claims and defenses of the parties principally would concern the propriety of the defendant's systematic actions and application of their policies, they are sufficiently typical of all class members to be addressed in common. Either all plaintiffs are entitled to relief or none of them are; and whatever relief they should receive would be common to them all in the form of a statutory damage award per occurrence of the unlawful conduct. For the same reasons, the common questions in this case entirely predominate over any individualized

issues, since there are no issues that would implicate the individual circumstances of class members.

*Fourth*, the named plaintiff is adequately positioned to represent the class, and her interests are sufficiently aligned, since all were Michigan residents who had their personal subscriber information unlawfully disclosed by the defendant. The named plaintiff has devoted significant time and energy to this case by participating in settlement negotiations and sitting for a deposition.

The plaintiff also has established that the membership of the proposed class is sufficiently ascertainable for certification under Rule 23(b)(3), as shown by the identification of approximately 164,509 class members from the defendant's records. The class administrator attested that it succeeded in mailing notices of the settlement to more than 97% of those identified absent class members, and internet outreach efforts resulted in several additional contacts with potential claimants. The common issues predominate over any questions affecting individual members, and because of the modest upside damage potential, a class action is superior to other litigation options for resolving the controversy.

The Court will certify the settlement class unconditionally.

VII.

For the reasons stated, the Court unconditionally certifies the settlement class and approves the settlement.

Accordingly, it is **ORDERED** that the plaintiff's motion for final approval of the class settlement and plan of allocation [R. 75] is **GRANTED**.

It is further **ORDERED** that the objections to the settlement are **OVERRULED** for the reasons stated here and on the record.

It is further **ORDERED** that the settlement agreement and plan of allocation is **APPROVED**.

It is further **ORDERED** that the three individuals who opted out of the class are deemed excluded from the class and are not bound by, nor may they participate in, the class settlement.

It is further **ORDERED** that Angeion Group is **APPOINTED** as the administrator of the settlement fund. The administrator shall receive, disburse, and account for the settlement proceeds as provided by the formula for distribution of the settlement fund set forth in the settlement agreement. Class counsel shall provide and file with the Court and the defendants a report setting forth the proposed distribution of all funds paid by the defendants as called for in the settlement agreement upon completion of the evaluation of the requests for payment received from class members. After final distribution, class counsel shall file with the Court a certificate that the settlement fund has been disbursed according to the plan, or that funds remain undistributed for any reason, including uncashed settlement checks, as the case may be.

It is further **ORDERED** that an incentive award in the amount of $2,500 is approved and may be distributed to the named plaintiff, Rebecca Friske. The incentive award may be designated as an administration expense and paid according to the appropriate priority as outlined in the settlement agreement.

It is further **ORDERED** that this action is dismissed with prejudice; provided, however, that this Court retains jurisdiction over all matters relating to the enforcement of equitable relief, and the administration of the settlement agreement, including allocation and distribution of the settlement fund.

It is further **ORDERED** that class counsel and the settlement administrator, Angeion Group, shall remain responsible for completion of the administration of the claims and distribution

of the funds, but they may not invade the settlement fund for further reimbursement or payment of fees absent further order of the Court.

                                                  s/David M. Lawson
                                                  DAVID M. LAWSON
                                                  United States District Judge

Date: September 26, 2019

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on September 26, 2019.

                              s/Susan K. Pinkowski
                              SUSAN K. PINKOWSKI

---